J-S41043-14

2014 PA Super 273

COMMONWEALTH OF PENNSYLVANIA

Appellee

v.

MAURQUIS THOMPSON

Appellant

IN THE SUPERIOR COURT OF PENNSYLVANIA

No. 2313 EDA 2013

Appeal from the Judgment of Sentence June 21, 2013
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0002230-2012

BEFORE:  BOWES, J., DONOHUE, J., and MUNDY, J.

OPINION BY MUNDY, J.:                    **FILED DECEMBER 10, 2014**

Appellant, Maurquis Thompson, appeals from the June 21, 2013 judgment of sentence of life imprisonment plus 36 to 72 months' imprisonment imposed after a jury found him guilty of two counts each of third-degree murder, homicide by vehicle while driving under the influence (DUI), homicide by vehicle, accidents involving death, and accidents involving death while not properly licensed; and one count each of fleeing or attempting to elude a police officer, DUI (marijuana), DUI (metabolite of marijuana), and possession of marijuana.[1]  After careful review, we vacate

_____

[1] 18 Pa.C.S.A. § 2502(c), 75 Pa.C.S.A. §§ 3735(a), 3732(a), 3742(a), 3742.1(a), 3733(a), 3802(d)(1)(i), 3802 (d)(1)(iii), and 35 P.S. § 780-113(a)(31), respectively.

the judgment of sentence and remand for the limited purpose of correcting the clerical error contained within the underlying judgment of sentence. In all other respects, we affirm.

The trial court summarized the relevant factual and procedural history of this case as follows.

> On December 9, 2011[,] Officer Michael Fiocca, an officer with the Folcroft police department, was on duty and working patrol. At approximately 9:35 P.M. Officer Fiocca observed a vehicle traveling westbound on Chester Pike at a very high rate of speed. Based upon his observations, Officer Fiocca activated his emergency lights and siren and attempted to stop the vehicle. The driver of the vehicle, who was later identified as [Appellant], stopped for several seconds, then fled the scene at a very high rate of speed, entering the intersection of Chester Pike and Glenolden Avenue, and failing to stop at the steady red light. As he did so, the Appellant struck two young boys that were then crossing the street [on foot] in front of his vehicle's path. Appellant did not stop after striking these boys.
>
> Ashley Hochstuhl and David Macintosh were stopped at the red light on Chester Pike at Glenolden Avenue at the time of the incident. Ms. Hochstuhl observed the boys in the crosswalk before [] Appellant entered the intersection. Ms. Hochstuhl watched as the boys were hit by [Appellant's] vehicle. David Macintosh was seated in the passenger seat of Ms. Hochstuhl's vehicle and exited the vehicle after he heard the collision. Mr. Macintosh saw that one of the boys, [M.M.], was moving, and he spoke to him until the paramedics arrived on the scene. [M.T.] was not moving and was pronounced dead on the scene. [M.M] was transported to Crozer-Chester Medical Center and died the next day.

Within minutes of the accident, officers located an unoccupied Chevy Lumina on Chester Pike near Cleveland Avenue, which was approximately two to three blocks from the scene of the hit and run. Officers also located and stopped [] Appellant, who was walking along West Winona Avenue, three blocks from where the Lumina had been located. Appellant was charged with several crimes related to the hit and run and the resultant deaths of [M.M.] and [M.T.]

Following a five day trial, a jury found Appellant guilty of [the aforementioned offenses]. On May 17, 2013[,] the Commonwealth filed notice of its intent to seek a life sentence pursuant to 42 Pa.C.S.A. § 9715 for a second or subsequent conviction of murder in the third degree.

Trial Court Opinion, 2/28/14, at 1-2 (citations to transcript and footnote omitted).

On June 21, 2013,[2] the trial court sentenced Appellant as follows. Count 1 (third-degree murder) – 20 to 40 years' imprisonment; Count 2

---

[2] Within its Rule 1925(a) opinion, the trial court maintains that it sentenced Appellant on either June 12 or June 14, 2013 and that the Notes of Testimony from the sentencing hearing incorrectly state it sentenced Appellant on June 21, 2013. Trial Court Opinion, 2/28/14, at 1 (reflecting the June 14, 2013 date), 20 (reflecting the June 12, 2013 date). Upon review of the record, we note the June 14, 2013 sentencing date is also present within the docket entries. Yet, the following documents of record portray that sentencing occurred on June 21, 2013: an April 18, 2013 notice of sentencing hearing; a June 12, 2013 transport order, advising the Superintendent of SCI Graterford to release Appellant to the Delaware County sheriffs for a sentencing hearing on June 21, 2013; a handwritten date and signature on the judgment of sentence, which was filed on June 22, 2013; and the Notes of Testimony. "Although the trial court docket is part of the official record, when it is at variance with the certified record it references, the certified record controls." ***See Shelly Enters., Inc. v.***
*(Footnote Continued Next Page)*

(third-degree murder) – mandatory term of life imprisonment to run concurrent with Count 1; Count 3 (homicide by vehicle while DUI) – 42 to 84 months' imprisonment to run concurrent with Count 2; Count 4 (homicide by vehicle while DUI) – 42 to 84 months' imprisonment to run consecutive to Count 3; Count 5 (homicide by vehicle) – 18 to 36 months' imprisonment to run consecutive to Count 2; Count 6 (homicide by vehicle) – 18 to 36 months' imprisonment to run consecutive to Count 2; Count 7 (fleeing or attempting to elude) – 6 to 12 months' imprisonment to run concurrent with Count 2; Count 8 (accidents involving death) – 12 to 24 months' imprisonment to run concurrent with Count 2; Count 9 (accidents involving death) – 12 to 24 months' imprisonment to run concurrent with Count 2; Count 10 (accidents involving death when not properly licensed) – 12 to 24 months' imprisonment to run concurrent with Count 2; Count 11 (accidents involving death when not properly licensed) – 12 to 24 months' imprisonment to run concurrent with Count 2; and Count 14 (possession of marijuana) – 15 to 30 days' imprisonment to run concurrent with Count 2.[3]

_(Footnote Continued)_ ―――――――――

**_Guadagnini_**, 20 A.3d 491, 495 (Pa. Super. 2011) (citation omitted). Accordingly, we conclude Appellant's sentence was imposed on June 21, 2013 and the erroneous docket entry does not negate our jurisdiction.

[3] The trial court merged Count 12 (DUI) and Count 13 (DUI) with Count 3 (homicide by vehicle while DUI) and Count 4 (homicide by vehicle while DUI) for sentencing purposes. Trial Court Sentencing Order, 6/22/13, at 2.

Accordingly, Appellant's aggregate sentence is life imprisonment plus 36 to 72 months' imprisonment.

On July 1, 2013, Appellant filed a timely post-sentence motion, which the trial court denied on July 12, 2013. On August 7, 2013, Appellant filed a timely notice of appeal.[4]

On appeal, Appellant raises the following issues for our review.

> 1. Whether the trial court abused its discretion in denying [a] **Batson** challenge, where [the] Commonwealth's rationale for striking [an] African-American juror, was [a] mere pretext, not [a] legitimate race[-]neutral explanation, thereby prejudicing Appellant's right to a fair trial?
>
> 2. Whether [the] trial court abused its discretion in denying Appellant's motion for mistrial, where the Commonwealth elicited testimony of Detective [Lythgoe] on direct examination that [a] recorded conversation of Appellant[,] stating to his Uncle that he did not see [the] victims at [the] time of [the] collision, was acquired at Delaware County prison, [*i.e.*, George W. Hill Correctional Facility,] in violation of [an] explicit agreement that the Commonwealth was not to elicit that Appellant was incarcerated at [the] time of [the] recording, as well as [the] general common

_____

[4] The trial court did not order Appellant to file a concise statement of matters complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925. However, Appellant elected to file a Rule 1925(b) statement on January 14, 2014. The trial court filed its Rule 1925(a) opinion on February 28, 2014. As the trial court relied upon Appellant's Rule 1925(b) statement when authoring its opinion, we will hold Appellant to the issues raised within said statement. **See Commonwealth v. Smith**, 955 A.2d 391, 393 n.4 (Pa. Super. 2008) (*en banc*).

law prohibition against references to criminal defendants involvement in other crimes?

[3.] Whether the trial court abused its discretion in admitting [] Appellant's text messages on the day of the incident, where the Commonwealth did not disclose or turn over the evidence prior to trial, thereby prejudicing Appellant's right to a fair trial?

[4.] Whether there was insufficient evidence to support Appellant's convictions for two counts of Third Degree Murder, where there was no evidence that Appellant intentionally, deliberately, or with malice ran over the victims, and his conduct in fatally striking [the victims] after [driving] through a red light, while heavily under the influence of marijuana, clearly constituted gross negligence, conduct which is only actionable as Homicide by Vehicle while [D]riving [U]nder the Influence, Involuntary Manslaughter and/or Homicide by Vehicle?

[5.] Whether the verdict finding Appellant guilty of two counts of Third Degree Murder was against the weight of the evidence, where the medical examiners[,] who performed the autopsies of both victims, concluded that the manner of death for both victims was an accident, not homicide, and Appellant, who was under the influence of marijuana, clearly did not act with malice, where he did not see either victim at the time of the collision and was unaware that he had struck anyone, [either] coincident with the accident or its aftermath?

[6.] Whether the term of Life [Imprisonment] imposed by the trial court, pursuant to the Mandatory Life Imprisonment provision, under 42 Pa.C.S.A. [§] 9715, for Appellant's [second] conviction for Third Degree Murder, arising from a single fatal automobile accident, involving two [victims], is an illegal sentence,

where the General Assembly clearly did not inten[d] such an absurd and unreasonable disposition?

[7.] Whether the term of Life [Imprisonment] imposed by the trial court, pursuant to the Mandatory Life Imprisonment Provision, under 42 Pa.C.S.A. [§] 9715, for Appellant's second conviction for Third Degree Murder, constitutes cruel and unusual punishment, under the Eighth Amendment of the United States Constitution and Article 1, Section 8 of the Pennsylvania [] Constitution, and is therefore, illegal?

[8.] Whether the trial court abused its discretion in [imposing] a manifestly excessive sentence, which violates the fundamental norms of sentencing established in 42 Pa.C.S.A. [§] 9721(b), where the court's decision to sentence to an excessive level[,] in light of the criminal conduct at issue in the case, [caused] the sentence [to] far exceed[] what is necessary to protect the public or provide for Appellant's rehabilitative needs?

Appellant's Brief at 10-12.[5]

Initially, Appellant maintains the trial court abused its discretion when it denied his **Batson**[6] challenge during *voir dire*. **Id.** at 26-33. Specifically,

_____

[5] For ease of our disposition, we have elected to renumber Appellant's issues.

[6] **Batson v. Kentucky**, 476 U.S. 79 (1986) (holding that the Equal Protection Clause forbids a prosecutor to challenge potential jurors solely on account of their race).

Appellant, who is African American[7], objected to the Commonwealth's use of a peremptory challenge to exclude an African American woman from the jury, *i.e.*, Juror 82.[8] N.T., 4/5/13, at 231-234.

We review a trial court's denial of a **Batson** claim for clear error. **Commonwealth v. Cook**, 952 A.2d 594, 603 (Pa. 2008) (stating that the trial court's decision on the ultimate question of discriminatory intent represents a finding of fact that is accorded great deference on appeal and will not be overturned unless clearly erroneous).

**Batson** and its progeny established a three-part inquiry for evaluating a claim of racial discrimination in jury selection.

> [T]he [movant] has to initially establish a *prima facie* showing that the circumstances give rise to an inference that the [opposing party] struck one or more prospective jurors on account of race. If the *prima facie* showing is made, the burden shifts to the [opposing party] to articulate a race-neutral explanation for striking the juror(s) at issue. The trial court ultimately makes a determination of whether the [movant] has carried [the] burden of proving purposeful discrimination.

**Commonwealth v. Sanchez**, 36 A.3d 24, 44 (Pa. 2011), *cert. denied*, **Sanchez v. Pennsylvania**, 133 S. Ct. 122 (2012).

The requirements for a *prima facie* **Batson** showing are well settled.

> Generally, in order … to satisfy the first

---

[7] **See** Criminal Complaint, 12/10/11.
[8] We note Appellant did not move for a mistrial when asserting this challenge. **See** N.T., 4/5/13, at 231-234.

> requirement of demonstrating a *prima facie* **Batson** claim, [the movant] must establish that [he or she] is a member of a cognizable racial group, that the [opposing party] exercised peremptory challenges to remove from the venire members of [his or her] race, and that other relevant circumstances combine to raise an inference that the [opposing party] removed the jurors for racial reasons. Whether the [movant] has carried this threshold burden of establishing a *prima facie* case should be determined in light of all the relevant circumstances.

*Commonwealth v. Ligons*, 971 A.2d 1125, 1142 (Pa. 2009).

A showing that a number of strikes were used against venirepersons of one race will not, without more, create the inference necessary to establish a *prima facie* **Batson** claim. *See Commonwealth v. Saunders*, 946 A.2d 776, 783 (Pa. Super. 2008) (stating, "the striking of a number of individuals belonging to some cognizable minority group… is not dispositive that a violation of **Batson** has occurred[]"), *appeal denied*, 958 A.2d 1047 (Pa. 2008). Rather, our Supreme Court has continually recognized that a moving party must preserve a "full and complete record of the asserted [**Batson**] violation, as it would otherwise be impossible to conduct meaningful appellate review of the motivations of prosecutors in individual cases [without such a record.]" *Commonwealth v. Fletcher*, 861 A.2d 898, 909 (Pa. 2004) (citation omitted), *cert. denied*, *Fletcher v. Pennsylvania*, 547 U.S. 1041 (2006). "This full and complete record requirement necessitates that the movant make a record identifying the race of venirepersons stricken by the Commonwealth, the race of prospective jurors acceptable to the

Commonwealth but stricken by the defense, and the racial composition of the final jury." *Id.* at 910 (citation, footnote, and internal quotation marks omitted). When a movant fails to make such a record, we cannot review the trial court's determination that a movant failed to establish a *prima facie* case under *Batson*. *Id.* at 909-910, *citing Commonwealth v. Holloway*, 739 A.2d 1039 (Pa. 1999).

Herein, Appellant raised his *Batson* claim after the Commonwealth exercised its ninth peremptory challenge as to Juror 82. N.T., 4/5/13, at 231-234. At that point, Appellant made a record identifying only the race of Juror 82; Appellant failed to state the race of any other venirepersons. *See id.*[9] Likewise, Appellant neglected to identify on the record the racial composition of the final jury. *Id.* at 239-241. Because Appellant failed to make the requisite full and complete record to facilitate appellate review, we

---

[9] The following exchange occurred when Appellant asserted his *Batson* challenge.

> THE COURT: … are there any other African-Americans on the panel?
>
> [PROSECUTOR]: Quite frankly, Your Honor, I don't know. It's…
>
> [DEFENSE COUNSEL]: He didn't strike no [sic] other African-Americans that I know of.

N.T., 4/5/13, at 233.

cannot address this claim. **See Fletcher**, **supra**; **Holloway**, **supra**. Thus, Appellant is entitled to no relief on his **Batson** claim.[10]

Appellant next asserts the trial court abused its discretion when it denied his motion for mistrial following the testimony of Detective Lythgoe that implied Appellant was incarcerated prior to trial. Appellant's Brief at 34-46. Appellant avers Detective Lythgoe's reference to the George W. Hill Correctional Facility in Delaware County "raised the spectre of [Appellant's] involvement in another criminal activity[ and subsequent incarceration]." *Id.* at 43.

The standard of review we apply when addressing a motion for mistrial is well settled.

> In criminal trials, the declaration of a mistrial serves to eliminate the negative effect wrought upon a defendant when prejudicial elements are injected into the case or otherwise discovered at trial. By nullifying the tainted process of the former trial and

---

[10] Assuming, *arguendo*, Appellant established a *prima facie* **Batson** claim, we would ultimately deem his challenge meritless. At a sidebar conference during *voir dire*, the Commonwealth explained that it struck Juror 82 based upon her employment as a drug and alcohol caseworker. N.T., 4/5/13, at 232. The Commonwealth was worried that Juror 82 would sympathize with Appellant, who was alleged to be under the influence of a controlled substance at the time of the incident. **Id.** at 234. Upon considering this reasoning, the trial court denied Appellant's **Batson** challenge, concluding that the Commonwealth provided a "legitimate non[-]racial reason for striking [the] juror." N.T., 4/5/13, at 234; Trial Court Opinion, 2/28/14, at 23-24. The trial court concluded Appellant did not establish the Commonwealth's "purposeful discrimination" when striking Juror 82. **See** Trial Court Opinion, 2/28/14, at 24 n.7. We conclude this finding is not clearly erroneous. **See Cook**, **supra**.

> allowing a new trial to convene, declaration of a mistrial serves not only the defendant's interests but, equally important, the public's interest in fair trials designed to end in just judgments. Accordingly, the trial court is vested with discretion to grant a mistrial whenever the alleged prejudicial event may reasonably be said to deprive the defendant of a fair and impartial trial. In making its determination, the court must discern whether misconduct or prejudicial error actually occurred, and if so, … assess the degree of any resulting prejudice. Our review of the resulting order is constrained to determining whether the court abused its discretion.

*Commonwealth v. Hogentogler*, 53 A.3d 866, 877-878 (Pa. Super. 2012) (citation omitted), *appeal denied*, 69 A.3d 600 (Pa. 2013).

It is also well established that evidence of other crimes, wrongs, or acts may not be presented during trial against a criminal defendant as either character or proclivity evidence. Pa.R.E. 404(b); *Commonwealth v. Padilla*, 923 A.2d 1189, 1194 (Pa. Super. 2007), *appeal denied*, 934 A.2d 1277 (Pa. 2007).

> However, mere passing references to prior criminal activity will not necessarily require reversal unless the record illustrates definitively that prejudice results. Prejudice results where the testimony conveys to the jury, either expressly or by reasonable implication, the fact of another criminal offense. Determining whether prejudice has occurred is a fact specific inquiry.

*Padilla*, *supra* at 1194-1195 (citations and quotation marks omitted). "If evidence of prior criminal activity is inadvertently presented to the jury, the trial court may cure the improper prejudice with an appropriate cautionary instruction to the jury." *Commonwealth v. Hudson*, 955 A.2d 1031, 1034

- 12 -

(Pa. Super. 2008), *appeal denied*, 964 A.2d 1 (Pa. 2009). It is imperative for the trial court's instruction to be "clear and specific, and must instruct the jury to disregard the improper evidence." ***Id.***

In the case *sub judice*, the Commonwealth presented the testimony of Detective Lythgoe, the lead investigator in the underlying case. N.T., 4/9/13, at 196-229. The portion of Detective Lythgoe's testimony at issue concerns a statement that he made following the playing of a taped telephone conversation. ***Id.*** at 203. Prior to trial, the parties stipulated to admit this telephone conversation, which was recorded while Appellant was incarcerated. N.T., 4/5/13, at 20-25. Also at that time, the Commonwealth agreed that its witness would not reference from where it procured the recording. ***Id.*** However, following the playing of this recording for the jury, Detective Lythgoe testified as follows.

> [PROSECUTOR]: Detective, as the lead detective in this case, what other duties d[id] you perform?
>
> [DETECTIVE]: I had prepared several search warrants. I had to prepare correspondence to the George W. Hill Correctional Facility to get those recordings.
>
> [DEFENSE COUNSEL]: Objection. Objection. Objection.

N.T., 4/9/13, at 203. Appellant subsequently requested a mistrial, which the trial court denied on the basis that the prosecution did not elicit the testimony either purposefully or intentionally. ***Id.*** at 203, 213, 219. The trial court further reasoned that Detective Lythgoe did not explicitly state

- 13 -

that Appellant was incarcerated; rather, the detective stated that he had to go to the prison to retrieve the tape recordings. ***Id.*** at 218, *referencing* ***Estelle v. Williams***, 425 U.S. 501, 512-513 (1976) (concluding, "the State cannot… compel an accused to stand trial before a jury while dressed in identifiable prison clothes"); ***Commonwealth v. Johnson***, 838 A.2d 663, 681 (Pa. 2002) (concluding, "the reference to Johnson's incarcerated status was passing, and not the type of 'constant reminder' proscribed by ***Estelle***[]"), *cert. denied*, ***Johnson v. Pennsylvania***, 543 U.S. 1008 (2004). Yet, the trial court proposed to provide the jury with a cautionary instruction regarding this reference to the prison. N.T., 4/9/13, at 216. Appellant twice rejected this offered instruction. ***Id.*** at 217, 219.

Upon review of the record, we conclude the trial court did not abuse its discretion when denying Appellant's mistrial request. ***See Hogentogler***, ***supra***. We agree with the trial court that the Commonwealth inadvertently presented this testimony to the jury. In order to cure this inadvertent disclosure, the trial court offered to administer a cautionary instruction, which Appellant denied, twice. N.T., 4/9/13, at 216-217, 219. Appellant cannot now chastise the trial court for not providing him with a cautionary instruction regarding this slip-of-tongue. Appellant's Brief at 43, 45. As the record does not definitively illustrate that Appellant incurred prejudice from Detective Lythgoe's comment, Appellant's second claim fails. ***See Padilla***, ***supra***.

Appellant's third claim pertains to the admission of evidence. Appellant's Brief at 70-73. Appellant asserts the trial court abused its discretion when it admitted a text message procured from his cell phone because the Commonwealth did not provide the text message to him prior to trial. *Id.* at 70-71. Appellant requests a new trial. *Id.* at 72.

In reviewing a trial court's ruling on the admissibility of evidence, our standard of review is one of deference. ***Commonwealth v. Selenski***, 18 A.3d 1229, 1232 (Pa. Super. 2011). Questions concerning the admissibility of evidence are within "the sound discretion of the trial court, and its discretion will not be reversed absent a clear abuse of discretion." ***Id.*** (citation omitted). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." ***Commonwealth v. Harris***, 884 A.2d 920, 924 (Pa. Super. 2005) (internal citations and quotation marks omitted), *appeal denied*, 928 A.2d 1289 (Pa. 2007). Furthermore, "if in reaching a conclusion the trial court over-rides [sic] or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error." ***Commonwealth v. Weakley***, 972 A.2d 1182, 1188 (Pa. Super. 2009) (citation omitted), *appeal denied*, 986 A.2d 150 (Pa. 2009).

Pennsylvania Rule of Criminal Procedure 573 outlines pretrial discovery procedures and provides, in pertinent part, as follows.

**Rule 573.  Pretrial Discovery and Inspection**

…

(B)    Disclosure by the Commonwealth.

(1)    *Mandatory.*  In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case.  The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.

…

(g)    [T]he transcripts and recordings of any electronic surveillance, and the authority by which the said transcripts and recordings were obtained.

Pa.R.Crim.P.  573(B)(1).   "On the issue of whether or not disclosure occurred, the trial court functions as fact-finder, and the appellate courts generally do not substitute their judgments for those of a fact-finder in matters of credibility."  ***Commonwealth v. Sanchez***, 907 A.2d 477, 491 (Pa. 2006), *cert. denied*, ***Sanchez v. Pennsylvania***, 551 U.S. 1106 (2007).

During the instant trial, the Commonwealth presented text messages exchanged between Appellant and his girlfriend, Angela Potter, on the night of the incident, through the testimony of an expert in mobile forensics.  N.T.,

4/10/13, at 12-42. At the beginning of this expert's testimony, the following discussion occurred at side bar.

> [DEFENSE COUNSEL]: Your Honor, I have not received these documents…
>
> [PROSECUTOR]: These documents were all contained on the same disks that were provided and put on the record yesterday by [Attorney] Williams[, Appellant's prior counsel]. They were all part of the same group of things that were there, one of them being the disk from the FBI[ containing these text messages].
>
> THE COURT: What can I say, [defense counsel]?
>
> [DEFENSE COUNSEL]: All right.
>
> THE COURT: Good enough.

*Id.* at 20-21.

Within its Rule 1925(a) opinion, the trial court maintains this issue is without merit because "[Appellant] did not object to any evidence regarding the content of text messages recovered from Appellant's phone on the basis that they had not been turned over by the Commonwealth prior to trial." Trial Court Opinion, 2/28/14, at 25. Although we disagree with the trial court that Appellant neglected to object to the text message at issue, we agree with the court's conclusion that this issue lacks merit. *See In re T.P.*, 78 A.3d 1166, 1170 (Pa. Super. 2013) (providing, "it is a well-settled doctrine in this Commonwealth that a trial court can be affirmed on any valid basis appearing of record[]"), *appeal denied*, 93 A.3d 463 (Pa. 2014). During trial, Appellant did not contest the Commonwealth's assertion that it

had provided these text messages to him prior to trial, and the trial court concluded disclosure occurred.[11]  N.T., 4/10/13, at 20-21.  It is axiomatic that "[a] party may not remain silent and afterwards complain of matters which, if erroneous, the court would have corrected." ***Commonwealth v. Strunk***, 953 A.2d 577, 579 (Pa. Super. 2008).  Accordingly, we refuse to substitute our judgment for that of the trial court and find an abuse of discretion occurred. ***See Selenski***, ***supra***.  This issue lacks merit.

Appellant next questions the sufficiency of the evidence underlying his third-degree murder convictions.  Appellant's Brief at 50-55.  Specifically, Appellant challenges the evidence underlying his *mens rea*.

> In the case *sub judice*, there was no evidence that [Appellant] intentionally ran over [M.T.] and [M.M.], where he did not even see them, immediately preceding, during or shortly after the accident, because his perception was wholly compromised by marijuana intoxication.  However, tragically Appellant did intentionally drive into the intersection, because he falsely perceived due to his marijuana intoxication that the light was changing from yellow to red, when it was plainly red, and that the intersection was clear of pedestrians.

***Id.*** at 51 (emphasis omitted), *citing **Commonwealth v. Johnson***, 719 A.2d 778, 785 (Pa. Super. 1998) (*en banc*), *appeal denied*, 739 A.2d 1056 (Pa.

---

[11] At that point in the trial, Attorney Williams, Appellant's prior counsel, had told the trial court that the Commonwealth provided him with compact disks (CDs) during discovery.  N.T., 4/9/13, at 92-96.  Following this assertion, Appellant's trial counsel stated to the trial court that Attorney Williams turned over these CDs to him. ***Id.*** at 95.  Trial counsel further revealed that the CDs that he chose to review contained only photographs and videos. ***Id.***

1999). Appellant asserts his actions constituted gross negligence, not maliciousness. *Id.*, *citing* **Commonwealth v. Matroni**, 923 A.2d 444 (Pa. Super. 2007), *appeal denied*, 952 A.2d 675 (Pa. 2008). Accordingly, Appellant requests this Court vacate his murder convictions. *Id.* at 55.

Our standard of review is well settled.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. **The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence**. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

**Commonwealth v. Caban**, 60 A.3d 120, 132-133 (Pa. Super. 2012) (emphasis added), *appeal denied,* 79 A.3d 1097 (Pa. 2013), *quoting*

**Commonwealth v. Quel**, 27 A.3d 1033, 1037-1038 (Pa. Super. 2011).

It is rare, but not impossible, for a death caused by a motor vehicle accident to give rise to a third-degree murder conviction. ***Commonwealth v. Pigg***, 571 A.2d 438, 442 (Pa. Super. 1990), *appeal denied*, 581 A.2d 571 (Pa. 1990); ***see also, e.g.***, ***Commonwealth v. Dunphy***, 20 A.3d 1215, 1219 (Pa. Super. 2011); ***Commonwealth v. Levin***, 816 A.2d 1151, 1153 (Pa. Super. 2003), *appeal denied*, 839 A.2d 351 (Pa. 2003). Pursuant to the Pennsylvania Crimes Code, "[a] person is guilty of criminal homicide if he intentionally, knowingly, recklessly or negligently causes the death of another human being." 18 Pa.C.S.A. § 2501(a). "Criminal homicide [is] classified as murder, voluntary manslaughter, or involuntary manslaughter." ***Id.*** § 2501(b). Murder is defined, in relevant part, as follows.

### § 2502. Murder

*(a) Murder of the first degree.* --A criminal homicide constitutes murder of the first degree when it is committed by an intentional killing.

(b) *Murder of the second degree.* --A criminal homicide constitutes murder of the second degree when it is committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony.

(c) *Murder of the third degree.* --All other kinds of murder shall be murder of the third degree. Murder of the third degree is a felony of the first degree.

…

***Id.*** § 2502. Accordingly, "[t]hird[-]degree murder occurs when a person commits a killing which is neither intentional nor committed during the

perpetration of a felony, but contains the requisite malice."

***Commonwealth v. Truong***, 36 A.3d 592, 597 (Pa. Super. 2012) (*en banc*)

(citation omitted), *appeal denied*, 57 A.3d 70 (Pa. 2012).

> Malice is defined as: wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured[.] Malice may be found where the defendant consciously disregarded an unjustified and extremely high risk that his actions might cause serious bodily injury. Malice may be inferred by considering the totality of the circumstances.

***Commonwealth v. Dunphy***, 20 A.3d 1215, 1219 (Pa. Super. 2011);

***accord Truong***, ***supra*** at 597-598. "[F]leeing the scene may be considered

in determining if an individual acted with malice." ***Dunphy***, ***supra*** at 1220

n.3 (citations omitted).

Herein, the trial court opines that the Commonwealth presented sufficient evidence to support Appellant's third-degree murder convictions. Trial Court Opinion, 2/28/14, at 13. Specifically, the trial court reasons, "[t]he evidence at trial clearly established that Appellant consciously disregarded an extremely high risk that his actions – actions which included driving while under the influence of marijuana at a high rate of speed through a steady red light without stopping to see if anyone or anything was in his lane of travel – might cause death or serious bodily injury." ***Id.***

Viewing the evidence adduced at trial in the light most favorable to the Commonwealth, as the verdict winner, we conclude there was sufficient

evidence to enable the trial court to sustain Appellant's convictions for third-degree murder. At the time of this incident, Appellant was driving at a high rate of speed (55-61 miles per hour in a 30-40 miles per hour zone), while under the influence of marijuana, in an attempt to flee from Officer Fiocca's pursuit. Trial Court Opinion, 2/28/14, at 8-11; N.T., 4/11/13, at 192. Appellant fled Officer Fiocca's initial traffic stop at a high rate of speed and proceeded through a steady red light, fatally striking two young pedestrians. Trial Court Opinion, 2/28/14, at 8-11. Upon being struck, M.M. and M.T. were propelled from 50 to 100 feet. N.T., 4/8/13, at 112, 137. Instead of stopping at the scene of the accident, Appellant fled, abandoned the vehicle involved in the accident, and hid from police. Trial Court Opinion, 2/28/14, at 8-11. There were no adverse weather conditions during this time that impeded Appellant's sight or precluded him from stopping after the accident. N.T., 4/8/13, at 57-58. These actions demonstrate a complete disregard of the unjustified and extremely high risk that his actions would cause death or serious bodily injury. Accordingly, we conclude the Commonwealth presented sufficient evidence to prove that Appellant acted with the requisite malice to support his third-degree murder convictions. **See Dunphy**, **supra** at 1219-1220 (evidence sufficient to prove malice based upon the following factors: intoxicated condition of driver; excessive rate of speed (60 miles per hour in a 35 miles per hour zone); driver's awareness of pedestrians in the area; driver's admission that he speeded up to make the light although he

saw pedestrians in front of him; distance victim's body was propelled; absence of any physical or climate condition that would contribute to the accident or the driver's failure to stop immediately after; and the driver's flight after hitting the victim); *Levin*, *supra* (evidence sufficient to prove malice when driver acknowledged: smoking marijuana and drinking a large quantity of alcohol in early afternoon; knowing this combination caused him to "black[] out[;]" and then driving down a busy residential street in the late afternoon); *Pigg*, *supra* at 442-443 (evidence sufficient to prove malice of intoxicated driver of eighteen-wheeled tractor trailer where: he forced multiple other drivers off of the road prior to the fatal accident; a fellow driver pleaded with him to stop driving prior to the fatal accident; and there were no weather or traffic conditions that required him to continue driving). Accordingly, the trial court did not err, and Appellant is not entitled relief on this issue.

Appellant next challenges the weight of the evidence supporting his third-degree murder convictions. Appellant's Brief at 46-49; Appellant's Post-Sentence Motion, 7/1/13, at 4.[12] Within Appellant's brief, he essentially reiterates his sufficiency argument, asserting "[he] did not consciously disregard an unjustified and extremely high risk, where he never saw the [victims] at any time immediately preceding, during, or immediately

---

[12] Appellant's motion does not contain pagination. We have assigned each page a sequential page number for ease of reference.

following the collision, and his marijuana intoxication impaired his judgment and perception to the extent that he was not aware of any risk when he fatefully drove his vehicle into the intersection." Appellant's Brief at 48. Within his question presented, Appellant also alleges the medical examiners' testimony contradicts the jury's convictions. *Id.* at 46.

This Court has long recognized that "[a] true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed." ***Commonwealth v. Lewis***, 911 A.2d 558, 566 (Pa. Super. 2006) (citation omitted). Where the trial court has ruled on a weight claim, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. ***Commonwealth v. Tharp***, 830 A.2d 519, 528 (Pa. 2003), *cert. denied*, ***Tharp v. Pennsylvania***, 541 U.S. 1045 (2004). Rather, "[our] review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim." ***Id.***

It is well established that this Court is precluded from reweighing the evidence and substituting our credibility determination for that of the fact-finder. ***See Commonwealth v. Champney***, 832 A.2d 403, 408 (Pa. 2003) (citations omitted) (stating, "[t]he weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses[]"), *cert. denied*, ***Champney v. Pennsylvania***, 542 U.S. 939 (2004). "[T]he evidence at trial need not

preclude every possibility of innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." *Commonwealth v. Emler*, 903 A.2d 1273, 1276 (Pa. Super. 2006).

> A new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail. In this regard, [t]he evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court.

*Commonwealth v. Ross*, 856 A.2d 93, 99 (Pa. Super. 2004) (citations and internal quotation marks omitted), *cert. denied*, *Ross v. Pennsylvania*, 547 U.S. 1045 (2006).

The trial court found no merit to Appellant's weight claim, stating as follows.

> It is clear the jury found the requisite malice for third[-]degree murder despite the doctors' testimony that the manner of death was, in their respective professional opinions, an accident. Respectfully, their verdict did not shock one's sense of justice as to require a new trial. It is not for th[e trial c]ourt to substitute its own judgment for that of the jury in Appellant's case.

Trial Court Opinion, 2/28/14, at 5-7.

In finding Appellant guilty, the jury clearly believed the Commonwealth's evidence offered to establish Appellant's *mens rea*. Upon our review of the medical examiners' testimony, these experts testified that

they deemed the victims' deaths as accidents from solely a medical-community prospective. N.T., 4/11/13, at 51, 55-56, 190-191. It was for the jury to decide whether these deaths were caused by Appellant's "conscious[] disregard[ of] an unjustified and extremely high risk that his actions might cause serious bodily injury[,]" for third-degree murder. **Dunphy**, **supra**. Because the evidence regarding Appellant's malice was not "tenuous, vague and uncertain[,]" the trial court did not abuse its discretion in denying Appellant's post-sentence motion for a new trial. **See Ross**, **supra**. Thus, Appellant's weight claim is without merit.

Appellant's remaining three issues challenge the sentence imposed by the trial court. **See** Appellant's Brief at 11-12. Within his sixth issue, Appellant challenges the legality of his Section 9715 mandatory life sentence. **Id.** at 56-59. Appellant asserts his sentence is illegal and should be vacated for the following reasons.

> [S]ubjecting Appellant, who had no history of violent or criminal contacts at the time of the incident in the case *sub judice*, to a Life Sentence, for causing two deaths in a single accident, is an absurd, unreasonable outcome, which was in no way intended by the Legislature, in fashioning the mandatory life provision of Section 9715. Such an outcome is in no way consistent with protecting the public or meeting Appellant's rehabilitative needs, but is solely punitive. The Legislature clearly wanted to deter would[-]be serial killers from engaging in separate and multiple murders, not potentially subject persons with no criminal background to life without parole, for a single horrific event.

**Id.** at 59 (emphasis omitted).

- 26 -

Our standard and scope of review for such a challenge is well settled.

> If no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction. An illegal sentence must be vacated. In evaluating a trial court's application of a statute, our standard of review is plenary and is limited to determining whether the trial court committed an error of law.

**Commonwealth v. Morris**, 958 A.2d 569, 577-578 (Pa. Super. 2008) (*en banc*) (citations and internal quotation marks omitted), *appeal denied*, 991 A.2d 311 (Pa. 2010); **see also** 18 Pa.C.S.A. § 9781(a).

In the case *sub judice*, the trial court imposed a mandatory sentence of life imprisonment for his second conviction of third-degree murder pursuant to Section 9715 of the Judicial Code, 42 Pa.C.S.A. §§ 101-9913. Trial Court Sentencing Order, 6/22/13, at 1. Section 9715 states, in pertinent part, as follows.

### § 9715. Life imprisonment for homicide.

*(a) Mandatory life imprisonment.* -- Notwithstanding the provisions of section 9712 (relating to sentences for offenses committed with firearms), 9713 (relating to sentences for offenses committed on public transportation) or 9714 (relating to sentences for second and subsequent offenses), any person convicted of murder of the third degree in this Commonwealth who has previously been convicted **at any time** of murder or voluntary manslaughter in this Commonwealth or of the same or substantially equivalent crime in any other jurisdiction shall be sentenced to life imprisonment, notwithstanding any other provision of this title or other statute to the contrary.

(b) *Proof at sentencing.* --Provisions of this section shall not be an element of the crime and notice thereof to the defendant shall not be required prior to conviction, but reasonable notice of the Commonwealth's intention to proceed under this section shall be provided after conviction and before sentencing. The applicability of this section shall be determined at sentencing. The sentencing court, prior to imposing sentence on an offender under subsection (a), shall have a complete record of the previous convictions of the offender, copies of which shall be furnished to the offender. If the offender or the attorney for the Commonwealth contests the accuracy of the record, the court shall schedule a hearing and direct the offender and the attorney for the Commonwealth to submit evidence regarding the previous convictions of the offender. The court shall then determine, by a preponderance of the evidence, the previous convictions of the offender and, if this section is applicable, shall impose sentence in accordance with this section. Should a previous conviction be vacated and an acquittal or final discharge entered subsequent to imposition of sentence under this section, the offender shall have the right to petition the sentencing court for reconsideration of sentence if this section would not have been applicable except for the conviction which was vacated.

42 Pa.C.S.A. § 9715 (emphasis added).

This Court has previously been called upon to interpret Section 9715. In **Commonwealth v. Smith**, 710 A.2d 1179 (Pa. Super. 1998), the defendant was convicted of two counts of third-degree murder, among other charges, arising from a single incident. **Id.** at 1180. This Court held that, because Smith was found guilty by the jury for two counts of third-degree murder at the same time, "it strain[ed] the plain meaning of the statute to interpret 'previously convicted' to encompass this situation." **Id.** at 1181.

We compared Section 9715 to the death penalty statute, noting that the text in the death penalty statute included the phrase "the defendant has been convicted of another [offense] committed either before or **at the time of** the offense at issue." *Id.* (emphasis in original), *quoting* 42 Pa.C.S.A. §§ 9711(d)(10), 9711(d)(11), 9711(d)(12). Based on these considerations, the **Smith** Court concluded the trial court did not err in refusing to apply Section 9715.

Subsequently, in **Morris**, we were confronted with an issue similar to that presented by Appellant, to wit, "whether the trial court may sentence a criminal defendant to life in prison under [S]ection 9715 where the two murders were tried and sentenced together under a multiple-count criminal complaint." **Morris**, **supra** at 578. Following our review of the "explicitly and unambiguously written[]" statute, we opined that the phrase "'[a]t any time' … clearly means that the order of commission, or conviction, of the offenses requiring a life sentence is immaterial so long as, at [the] time of sentencing on a third-degree murder conviction, a defendant has been convicted on another charge of murder or voluntary manslaughter." **Id.** at 579. We further reasoned that the legislature would have included that language within the statute if it intended for the defendant's previous conviction to antedate the commission of the second offense. **Id.** at 580. The **Morris** Court explicitly overruled **Smith**, concluding **Smith** was wrongly

decided because the **Smith** panel had "essentially read new requirements into the statutory language." **Id.** at 581.

> Section 9715 specifically focuses upon whether, at the time of sentencing, a defendant has been previously convicted "at any time." The statute does not state that the two murders must be tried and sentenced separately. Indeed, the plain language of the statute requires that the trial court determine whether a previous conviction exists at the time of sentencing, without giving consideration to when the conviction occurred. Further, the statute does not make any distinction between convictions that arise from a single criminal episode and multiple criminal episodes. We are bound by the unambiguous language of this statute and we cannot insert additional requirements that the legislature has not included. Accordingly, because the **Smith** Court's decision read requirements into the statute that plainly do not appear, we conclude that its reasoning is flawed and that the decision must be overruled.

**Id.** Thus, the **Morris** Court concluded "the trial court did not commit legal error in imposing the sentence of life in prison because the plain language of the statute specifies that the timing of the primary conviction is not relevant as long as the defendant has been convicted of the initial murder or manslaughter at the time of sentencing on the second murder." **Id.** at 579.

Similarly, the trial court in this matter sentenced Appellant to a mandatory term of life imprisonment for his second conviction of third-degree murder. Trial Court Sentencing Order, 6/22/13, at 1.[13] At the time

---

[13] The trial court's sentencing order does not contain pagination. We have assigned each page a sequential page number for ease of reference.

of Appellant's sentencing, Appellant had been convicted of two counts of third-degree murder. Verdict Slip, 4/12/13, at 1. The trial court imposed a sentence of 20-40 years' incarceration on Appellant's first third-degree murder conviction. Trial Court Sentencing Order, 6/22/13, at 1. The trial court then sentenced Appellant to a mandatory term of life imprisonment for his second conviction of third-degree murder. *Id.* As Section 9715 provides that the sentence of life imprisonment "shall be" imposed for a second third-degree murder conviction, the trial court is divested of any discretion in fashioning Appellant's sentence. *See Commonwealth v. Gonzales*, 609 A.2d 1368, 1373 (Pa. Super. 1992) (stating that a sentence of life imprisonment is required for a second murder or manslaughter conviction pursuant to Section 9715). Accordingly, the trial court did not commit an error of law when sentencing Appellant to life imprisonment, and Appellant's legality claim is meritless. *See Morris*, *supra* at 577-578.

Appellant next asserts his Section 9715 mandatory sentence of life imprisonment constitutes a cruel and unusual punishment prohibited by the Eighth Amendment to the United States Constitution and Article 1, Section 13 of the Pennsylvania Constitution. Appellant's Brief at 61-64. Specifically, Appellant contends that the application of the mandatory minimum sentence in his case resulted in a sentence that was grossly disproportionate to the conduct underlying his two third-degree murder convictions. *Id.* at 63.

While we have addressed the constitutionality of other statutes that prescribe mandatory minimum sentences, pursuant to the Eighth Amendment and Article 1, Section 13, Appellant's challenge to Section 9715 is an issue of first impression.[14]  *See Commonwealth v. Elia*, 83 A.3d 254 (Pa. Super. 2013) (upholding the constitutionality of 42 Pa.C.S.A. § 9718(a), which requires the imposition of certain mandatory minimum sentences to offenders whose victims are less than 16-years-old), *appeal denied*, --- A.3d

_____

[14] The Commonwealth's assertion that we recently addressed the constitutionality of Section 9715 against Eighth Amendment and Article 1, Section 13 challenges is mistaken.  Commonwealth's Brief at 46, *citing* **Commonwealth v. Lawson**, 90 A.3d 1 (Pa. Super. 2014).  In **Lawson**, a post-conviction relief petitioner contended his Section 9715 sentence of life imprisonment violated the federal and state prohibitions against cruel and unusual punishment because one of the predicate offenses upon which his sentence was based was committed by him while he was a juvenile, to wit, a third-degree murder conviction he committed when he was 17-years-old. **Lawson**, **supra** at 3.  As Lawson's underlying sentence became final on or about September 30, 1993, his Post-Conviction Relief Act (PCRA) petition was facially untimely.   42 Pa.C.S.A. § 9545(b)(1) (providing all PCRA petitions should be filed within one year of the date the judgment of sentence becomes final).  Lawson asserted a timeliness exception applied to his  petition based upon the Supreme Court of the United States' decision in **Miller v. Alabama**, 132 S. Ct. 2455, 2464 (2012) (holding "mandatory life-without-parole sentences for juveniles violate the Eighth Amendment[]"). **Lawson**, **supra** at 3, *citing* 42 Pa.C.S.A. § 9545(b)(1)(iii) (timeliness exception for constitutional rights recognized by the Supreme Court of the United States that have been held to apply retroactively).  Upon review of Lawson's claim, we concluded that we lacked jurisdiction over his petition. **Lawson**, **supra** at 6, *citing* **Commonwealth v. Cunningham**, 81 A.3d 1 (Pa. 2013) (holding **Miller** does not apply retroactively to an inmate, convicted as a juvenile, who is serving a life sentence without the possibility of parole, and who has exhausted his direct appeal rights and is proceeding under the PCRA).  Accordingly, we affirmed the PCRA court's dismissal of Lawson's petition and did not reach the merits of his constitutional claim. **Lawson**, **supra** at 8.

---, 2014 Pa. LEXIS 1609 (Pa. 2014); *Commonwealth v. Baker*, 78 A.3d 1044 (Pa. 2013) (upholding the constitutionality of 42 Pa.C.S.A. § 9718.2, which requires the imposition of certain mandatory minimum sentences for sexual offenders); *Commonwealth v. Spells*, 612 A.2d 458 (Pa. Super. 1992) (*en banc*) (upholding the constitutionality of 42 Pa.C.S.A. § 9712, which requires the imposition of a five-year mandatory minimum sentence to offenders who visibly display a firearm during the commission of certain felonies), *appeal dismissed*, 643 A.2d 1078 (Pa. 1994); *Commonwealth v. Parker*, 718 A.2d 1266 (Pa. Super. 1998) (upholding the constitutionality of 42 Pa.C.S.A. § 9714, which requires mandatory minimum sentences for recidivists of certain offenses), *appeal denied*, 747 A.2d 899 (Pa. 1999).

As the constitutionality of a statute presents a pure question of law, our standard of review is *de novo* and our scope of review is plenary. *Commonwealth v. Turner*, 80 A.3d 754, 759 (Pa. 2013). "We note that duly enacted legislation carries with it a strong presumption of constitutionality." *Id.* (citation omitted). "A presumption exists '[t]hat the General Assembly does not intend to violate the Constitution of the United States or of this Commonwealth' when promulgating legislation." *Baker*, *supra* at 1050, *quoting* 1 Pa.C.S.A. § 1922(3).

> Thus, a statute will not be found unconstitutional unless it clearly, palpably, and plainly violates the Constitution. If there is any doubt as to whether a challenger has met this high burden, then we will resolve that doubt in favor of the statute's constitutionality.

*Commonwealth v. Neiman*, 84 A.3d 603, 611 (Pa. 2013) (internal quotation marks and citations omitted).

Herein, Appellant contests the constitutionality of Section 9715 as to both the federal and state constitutions. Appellant's Brief at 61-64. It is well-settled that "the guarantee against cruel and unusual punishment contained in the Pennsylvania Constitution, Article 1, Section 13, provides no broader protections against cruel and unusual punishment than those extended under the Eighth Amendment to the United States Constitution." *Spells*, *supra* at 461; *accord Commonwealth v. Zettlemoyer*, 454 A.2d 937, 967 (Pa. 1982), *cert. denied*, *Zettlemoyer v. Pennsylvania*, 461 U.S. 970 (1983); *Elia*, *supra* at 267. As these constitutional provisions are coterminous, we need only engage in an Eighth Amendment review. *See Parker*, *supra* at 1268.

The Eighth Amendment to the Federal Constitution states, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. viii. The Eighth Amendment is unique in constitutional jurisprudence because it "draw[s] its meaning from the evolving standards of decency that mark the progress of a maturing society." *Trop v. Dulles*, 356 U.S. 86, 101 (1956) (plurality). "[T]he Eighth Amendment's protection against excessive or cruel and unusual punishments flows from the basic 'precept of justice that punishment for [a] crime should be graduated and proportioned to [the]

- 34 -

offense.'" ***Kennedy v. Louisiana***, 554 U.S. 407, 419 (2008), *quoting*
***Weems v. United States***, 217 U.S. 349, 367 (1910). "By protecting even
those convicted of heinous crimes, the Eighth Amendment reaffirms the duty
of the government to respect the dignity of all persons." ***Hall v. Florida***,
134 S. Ct. 1986, 1992 (2014) (citation omitted).

When attacking the constitutionality of a statute, an appellant can
raise two types of challenges: facial and as-applied. ***Commonwealth v.***
***Barnett***, 50 A.3d 176, 198 (Pa. Super. 2012), *appeal denied*, 63 A.3d 772
(Pa. 2013). Appellant attempts to assert both forms in this appeal.
Appellant's Brief at 61-64. We recently articulated the standard for facial
constitutional challenges.

> [A] plaintiff can only succeed in a facial challenge by
> establishing that no set of circumstances exists
> under which the Act would be valid, *i.e.*, that the law
> is unconstitutional in all of its applications. ... [A]
> facial challenge must fail where the statute has a
> plainly legitimate sweep.

***Barnett***, ***supra*** at 197 (citations and internal quotation marks omitted),
*quoting* ***Wash. State Grange v. Wash. State Republican Party***, 552 U.S.
442, 449 (2008). As was the case in ***Barnett***, Appellant's brief fails to
invoke any argument or suggestion that Section 9715 is "unconstitutional in
all of its applications" or that the statute fails the "plainly legitimate sweep"
test. Appellant's brief only contains arguments that the statute is
unconstitutional in its application to the circumstances present in Appellant's
case. ***See Barnett***, ***supra*** at 197-198. Accordingly, we conclude Appellant

has failed to properly develop a facial challenge of Section 9715 and has only challenged the constitutionality of the statute as applied in the instant case. *See id.* at 198.

Within Appellant's brief, he acknowledges "the Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences which are grossly disproportionate to the crime." Appellant's Brief at 62, *quoting* **Commonwealth v. Hall**, 701 A.2d 190, 209 (Pa. 1997), *cert. denied*, **Hall v. Pennsylvania**, 523 U.S. 1082 (1998), *citing* **Harmelin v. Michigan**, 501 U.S. 957, 1001 (1991). Appellant likewise identifies the objective criteria courts should apply when examining the alleged disproportionality of a statute under an Eighth Amendment challenge.[15] Appellant's Brief at 61-62. Yet, Appellant asserts his Section 9715 lifetime sentence is "grossly disproportionate to [his] actionable conduct in mistakenly and accidentally running over the two [victims]" because "[he] clearly did not act with the malice requisite for such a conviction." *Id.* at 63. He claims the actions underlying his third-degree murder convictions are more appropriately characterized as homicide by vehicle and homicide by vehicle while DUI and should be punished as such. *Id.*

---

[15] This test was promulgated by the United States Supreme Court in **Solem v. Helm**, 463 U.S. 277 (1983), clarified by our high Court in **Harmelin**, applied first by this Court in **Spells**, and adopted by the Pennsylvania Supreme Court in **Baker**.

In **Spells**, an *en banc* panel of this Court adopted the proportionality test courts should apply when examining a statute's constitutionality under the Eighth Amendment. **Spells**, **supra** at 461-464. Specifically, we concluded the following criteria should govern such an analysis: "(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." **Id.** at 462, *quoting* **Solem v. Helm**, 463 U.S. 277, 292 (1983); **accord Baker**, **supra** at 1047. Although no single factor is dispositive, the court's findings relative to the first factor may determine whether a particular sentence is constitutional. **Spells**, **supra** at 463; **accord Harmelin v. Michigan**, 501 U.S. 957, 1005 (1991); **Solem**, **supra** at 291 n.17; **Baker**, **supra**. Therefore, courts should initially consider if "a sentence is grossly disproportionate to a crime." **Spells**, **supra** at 463, *quoting* **Harmelin**, **supra**; **accord Baker**, **supra** at 1048. In other words, "[we] must examine whether the punishment fits the crime." **Parker**, **supra** at 1269. If the court concludes no such gross disproportionality exists, the sentence does not violate the Eighth Amendment. **See Baker**, **supra** at 1052; **Spells**, **supra** at 463-464.

With respect to the first prong of the proportionality test, Appellant argues that a comparison of the gravity of the offense with the harshness of the penalty imposed raises an inference of gross disproportionality.

Appellant's Brief at 63. We cannot agree. When considering the gravity of the offense, we reiterate Appellant drove under the influence of marijuana and a metabolite of marijuana, while possessing marijuana, fled from a traffic stop, proceeded through a steady red light, struck and killed two minor pedestrians without stopping to render aid, and, thereafter, hid from police. Trial Court Opinion, 2/28/14, at 8-11. Appellant was convicted by a jury of his peers of two counts of third-degree murder. Verdict Slip, 4/12/13, at 1. On the night of the incident, Appellant's actions resulted in the loss of the lives of two minors. Although these losses occurred following one fatal traffic accident, we cannot let that fact dilute the gravity of Appellant's actions.

Likewise, we cannot conclude that the punishment imposed for these offenses raises an inference of gross disproportionality. When considering the punishment for Appellant's two third-degree murder convictions, we remain cognizant of the fact "that the fixing of prison terms for specific crimes involves a substantive penological judgment that, as a general matter, is properly within the province of the legislatures, not courts." **Spells**, **supra** at 463 (internal quotation marks omitted), *quoting* **Harmelin**, **supra** at 998. Here, the legislature deemed the taking of two lives by third-degree murder to be punishable by a mandatory sentence of life imprisonment. 42 Pa.C.S.A. § 9715. The language of Section 9715 clearly expresses the legislature's intent to subject such an offender to this

sentence. *Id.*; *Morris*, *supra* at 579 (describing Section 9715 as an "explicitly and unambiguously written" statute). Here, the punishment is not disproportionate to the crime merely because Appellant alleges he "mistakenly" and "accidentally" killed two individuals. Appellant's Brief at 63. As discussed *supra*, the Commonwealth established the proper *mens rea* to support Appellant's two third-degree murder convictions. **See Dunphy**, *supra*; **Levin**, *supra*; **Pigg**, *supra*. As the legislature clearly intended to punish the taking of two lives with a term of life imprisonment, we conclude that Appellant's mandatory sentence of life imprisonment for his second conviction of third-degree murder is not so grossly disproportionate that it requires further inquiry or analysis. **See Spells**, *supra*. Thus, we need not reach the second and third prongs of the test for proportionality review under the Eighth Amendment. **See Baker**, *supra*. Therefore, Appellant's sentence does not offend the prohibition against cruel and unusual punishment in the Eighth Amendment of the United States Constitution or Article 1, Section 13 of the Pennsylvania Constitution.

Within his final issue, Appellant challenges the excessiveness of his sentence. Appellant's Brief at 65-69. Herein, the crux of Appellant's argument is that the trial court imposed a manifestly excessive sentence by running some of his sentences consecutively rather than concurrently. Appellant's Brief at 65-66; Trial Court Sentencing Order, 6/22/13, at 1 (where the trial court ordered Appellant's convictions as to Counts 4-6 to run

consecutive to either Count 2 or 3). Within the trial court's Rule 1925(a) opinion, it admits that it intended to run all of Appellant's convictions concurrent with his life sentence. Trial Court Opinion, 2/28/14, at 20; N.T., 6/21/13, at 83 (where the trial court stated, "I'm making all of the sentences concurrent to the life sentence[]"). As a result, the trial court requests the case be remanded to correct the sentence imposed. Trial Court Opinion, 2/28/14, at 20.

"[A] trial court has the inherent, common-law authority to correct 'clear clerical errors' in its orders." *Commonwealth v. Borrin*, 12 A.3d 466, 471 (Pa. Super. 2011) (*en banc*) (citation omitted), *affirmed*, 80 A.3d 1219 (Pa. 2013) (opinion announcing judgment). This authority exists even after the 30-day time limitation for the modification of orders expires. *Id.*, *citing* 42 Pa.C.S.A. § 5505. We have previously concluded that a "clear clerical error" exists on the face of the record "when a trial court's intentions are clearly and unambiguously declared during the sentencing hearing[.]" *Borrin*, *supra* at 473; *see also Commonwealth v. Holmes*, 933 A.2d 57, 67 (Pa. 2007) (concluding the limited, inherent judicial power of the court to correct patent errors arise in cases "involv[ing] clear errors in the imposition of sentences that [are] incompatible with the record"). When this situation arises, "the sentencing order [is] subject to later correction." *Borrin*, *supra* at 473. Accordingly, "an oral sentence which is on the record, written incorrectly by the clerk of courts, and then corrected by the trial judge, is []

a clerical error." *Id.* at 474, *quoting* **Commonwealth v. Kubiac**, 550 A.2d 219, 231 (Pa. Super. 1988), *appeal denied*, 563 A.2d 496 (Pa. 1989).

In the case *sub judice*, the trial court clearly and unambiguously declared during the sentencing hearing that "[it was] making all of the sentences concurrent to the life sentence." N.T., 6/21/13, at 83. Accordingly, the sentencing order is subject to correction by the trial court. **See Holmes**, **supra**; **Borrin**, **supra** at 473; **Kubiac**, **supra**.

Based upon the foregoing, we vacate Appellant's June 21, 2013 judgment of sentence and remand to the trial court for the limited purpose of correcting its order to reflect a concurrent sentencing scheme. We affirm Appellant's June 21, 2013 judgment of sentence in all other respects.

Judgment of sentence vacated. Case remanded for proceedings consistent with this opinion. Jurisdiction relinquished.

Judge Donohue joins the opinion.

Judge Bowes files a concurring opinion in which Judge Donohue joins.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary



Date: 12/10/2014