J-S15020-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| AARON GABRIEL MUMMERT | |
| Appellant | No. 1218 MDA 2014 |

Appeal from the Judgment of Sentence of June 26, 2014
In the Court of Common Pleas of Adams County
Criminal Division at No.: CP-01-CR-0000831-2013

BEFORE:  LAZARUS, J., WECHT, J., and JENKINS, J.

MEMORANDUM BY WECHT, J.:                    **FILED APRIL 06, 2015**

Aaron Gabriel Mummert appeals from the judgment of sentence that was imposed following his jury convictions of fleeing or attempting to elude a police officer and tampering with or fabricating physical evidence.[1] Counsel for Mummert has petitioned for leave to withdraw as counsel on the ground that Mummert's issues on direct appeal are wholly frivolous.  We grant the petition for leave to withdraw as counsel, and we affirm the judgment of sentence.

The trial court set forth the underlying history of this case as follows:

On June 11, 2013, at approximately 4:00 p.m., Trooper George Ross ("Trooper Ross") of the Pennsylvania State Police, Gettysburg Barracks, was in a marked patrol car positioned in

_____

[1]     75 Pa.C.S.A. § 3733 and 18 Pa.C.S.A. § 4910, respectively.

the area of State Route 234 and Route 15 in Adams County, Pennsylvania. Trooper Ross received a bulletin reporting that a sport bike style motorcycle was traveling at a high rate of speed with an operator who was not wearing a shirt or a helmet. A few minutes after receiving the bulletin, Trooper Ross heard a sport bike approaching before seeing it through his rearview mirror as it approached a stop sign, failed to stop, and made a right turn onto S.R. 234. During the approximately one second during which the Trooper was able to observe the front and side of the bike, he noted that the motorcycle was dark blue and the operator was a white male with short dark hair, that he was not wearing a shirt, and that he was wearing riding glasses.

Upon making these observations, Trooper Ross turned on his police cruiser's lights and sirens and followed the sport bike in an effort to make a traffic stop. The bike was traveling faster than the trooper, who was going 35 to 50 miles per hour. Trooper Ross saw the motorcycle again when it was about 100 yards ahead of him before the motorcycle "increased speed significantly" and passed two or three vehicles on a curve. The trooper gave chase and his cruiser reached speeds of 115 to 120 miles per hour, yet the motorcycle continued to pull away. Trooper Ross testified that, at the closest, he was 100 to 150 yards from the motorcycle. Trooper Ross then met up with Officer Greg Morehead ("Officer Morehead") of the Reading Township Police Department and the two pulled their vehicles to the side of the road. After Trooper Ross provided a description of the motorcycle and the rider to Officer Morehead, Officer Morehead mentioned the name Aaron Mummert and Trooper Ross testified that the name "clicked in [his] head" as matching the description of the operator.

Trooper Ross and Officer Morehead then traveled to where they knew [Mummert] to be living, at 8 Ewell Drive in Lake Meade, arriving at approximately 4:20 p.m. When Trooper Ross arrived, he noted that there was a blue motorcycle in the driveway that did not look like the sport bike he had attempted to stop. Before Trooper Ross had exited his vehicle, [Mummert] came out of the house, wearing a black t-shirt, dark jeans, boots, and dark riding glasses on top of his head. Upon interacting with Trooper Ross, [Mummert] appeared nervous, as evidenced by the fact that he was pacing and the veins in his face and neck were pulsing. Without being questioned about a motorcycle or the reason officers were at his house, [Mummert] pointed to the motorcycle in the driveway and said, "that's my bike." When asked about

his sport bike,[4] [Mummert] initially stated that it was at his grandmother's house in Hanover, Pennsylvania, before eventually admitting that he had placed it in the house to keep it out of the rain, despite the fact that it was not raining and there was no testimony that rain was forecasted that day.

[4] Officer Morehead had recently interacted with [Mummert] on an earlier occasion when he was riding his sport bike.

The officers recovered a sport bike from [Mummert's] basement around 5 p.m. which Trooper Ross stated was "exactly" the bike that he had seen in his rear view mirror. The basement smelled of exhaust fumes and the bike's engine was hot to the touch. The officers then placed [Mummert] under arrest and seized the bike as evidence. Later, as Trooper Ross was typing up charges, [Mummert] stated, "all this for $107;" Trooper Ross testified that $107 is the approximate cost of a stop sign violation after accounting for fines, fees, and other costs.

On cross examination, Trooper Ross testified that Officer Morehead had asked [Mummert] to take off his shirt. [Mummert] complied and turned around to show his entire torso and Trooper Ross said "I don't know about that" because he did not recall the rider having tattoos to the extent that he observed on [Mummert].[5] Officer Morehead then testified that he had previously interacted with [Mummert] approximately two weeks before the incident at issue, on May 22, 2013, on which occasion [Mummert] was riding his sport bike without a shirt and with a backwards baseball cap. Officer Morehead also routinely patrols Ewell Drive in Lake Meade and had seen motorcycles in [Mummert's] driveway while it was raining.

[5] Trooper Ross testified: "For that second that he went by, I wasn't able to observe the tattoos as the distance and things it was quick. I just knew it was a white male who operated a motorcycle that was dark blue with that detailing. There was radio traffic going between Pennsylvania State Police, Adams County, even to the guard shack, and to local PDs where somewhere tattoos" were mentioned.

*      *      *

The jury returned a verdict of guilty on counts of fleeing or attempting to elude a police officer and tampering with or

fabricating physical evidence. On June 26, 2014, [Mummert] was sentenced to fifteen (15) to thirty (30) months on his conviction of fleeing or attempting to elude [a] police officer and three (3) to six (6) months for tampering with or fabricating physical evidence, to run concurrently to his sentence on Count 1. On July 7, 2013, [Mummert] filed his Motion for Post-Trial Relief, . . . which was denied by th[e trial c]ourt. On July 8, 2013, [Mummert] filed a Motion to Order Bail Pending Defendant's Motion for Post-Trial Relief, which th[e trial c]ourt also denied. [Mummert] filed his Notice of Appeal on July 21, 2014. His Concise Statement of Matters Complained of on Appeal Pursuant to Pa.[R.A.P.] 1925(b) followed on August 14, 2014.

Trial Court Opinion ("T.C.O."), 9/22/2014, at 1-4, 7-8. On September 22, 2014, the trial court entered its Pa.R.A.P. 1925(a) opinion.

On December 9, 2014, counsel for Mummert filed an **Anders** brief in which he presented issues that might arguably support an appeal.[2] Counsel filed his petition for leave to withdraw as counsel on the same day, stating that, after a conscientious examination of the record, he determined that the appeal would be wholly frivolous. **See** Petition for Leave to Withdraw as Counsel, 12/9/2014, at unnumbered page 2 ¶ 4. Attached to the petition is a copy of his letter to Mummert advising him of counsel's intent to seek withdrawal as his counsel and of Mummert's right to retain new counsel or to proceed with his appeal *pro se*, and providing him with a copy of the **Anders**

_____

[2] **See Anders v. California**, 386 U.S. 738 (1967); **Commonwealth v. McClendon**, 434 A.2d 1185 (Pa. 1981), *abrogated in part by* **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009).

- 4 -

brief filed with this Court. ***See id.*** at Attachment. Mummert has not responded to counsel's petition for leave to withdraw.

> [I]n the ***Anders*** brief that accompanies . . . counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

***Commonwealth v. Santiago***, 978 A.2d 349, 361 (Pa. 2009).

> ***Anders*** counsel must also provide a copy of the ***Anders*** petition and brief to the appellant, advising the appellant of the right to retain new counsel, proceed *pro se* or raise any additional points worthy of this Court's attention.

> If counsel does not fulfill the aforesaid technical requirements of ***Anders***, this Court will deny the petition to withdraw and remand the case with appropriate instructions (*e.g.*, directing counsel either to comply with ***Anders*** or file an advocate's brief on Appellant's behalf). By contrast, if counsel's petition and brief satisfy ***Anders***, we will then undertake our own review of the appeal to determine if it is wholly frivolous. If the appeal is frivolous, we will grant the withdrawal petition and affirm the judgment of sentence. However, if there are non-frivolous issues, we will deny the petition and remand for the filing of an advocate's brief.

***Commonwealth v. O'Malley***, 957 A.2d 1265, 1266 (Pa. Super. 2008) (citations omitted).

In the instant case, counsel has complied substantially with the ***Anders*** and ***Santiago*** requirements. Counsel has submitted a brief that summarizes the case and cites to the record, ***see Anders*** Brief at 5-9;

refers to anything that might arguably support the appeal, *id.* at 10; and sets forth his reasoning and conclusion that the appeal is frivolous, *id.* at 10-14. *See Santiago*, 978 A.2d at 361. Counsel has filed a petition for leave to withdraw as counsel, sent Mummert a letter advising him that counsel found no non-frivolous issues, provided Mummert with a copy of the *Anders* brief, and notified Mummert of his right to retain new counsel or proceed *pro se*. Mummert has not responded.

"Once counsel has satisfied the [*Anders*] requirements, it is then this Court's duty to conduct its own review of the trial court's proceedings and render an independent judgment as to whether the appeal is, in fact, wholly frivolous." *Commonwealth v. Lilley*, 978 A.2d 995, 998 (Pa. Super. 2009) (citation omitted).

In the *Anders* brief, counsel identified four potential questions for our review:

> 1. Was the weight of the evidence at trial not sufficient for verdicts of guilty on fleeing or attempting to elude a police officer and tampering with or fabricating physical evidence?
>
> 2. Did the [t]rial [c]ourt err in allowing the Commonwealth to show a photograph of [Mummert's] motorcycle that they saw, and allowing the Commonwealth to put a similar motorcycle in the courtroom for the witnesses to testify that it was similar to the one they saw?
>
> 3. Did the [t]rial [c]ourt err by not allowing [Mummert] to remove his shirt to show his large tattoo to the jury, when none of the witnesses referenced that the driver of the motorcycle had a tattoo?
>
> 4. Did the [t]rial [c]ourt err in denying [Mummert's] Post-Sentence Motion on these issues?

*Anders* Brief at 4.

In the first issue presented in the *Anders* brief, counsel asserts that "the weight of the evidence was not sufficient for convictions of fleeing or attempting to elude a police officer and tampering with or fabricating physical evidence." *Id.* at 11. We disagree.

Our Supreme Court has held that:

> [t]he weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice. Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Champney*, 832 A.2d 403, 409 (Pa. 2003).

In reviewing Mummert's weight claim, the trial court stated:

> Here, the guilty verdicts rendered after [Mummert's] jury trial clearly cannot be characterized as so contrary to the weight of the evidence so as to shock one's sense of justice. . . . Throughout [Mummert's] trial, numerous witnesses credibly testified that they observed a blue sport bike which looked at least similar to the photograph they were shown of [Mummert's] bike. Nearly all of the eyewitnesses gave a description of the rider that matched [Mummert's] general physical appearance and the matter in which he was dressed on June 11, 2013, including testimony that the rider had short and dark hair, was not wearing a shirt, was wearing riding glasses, and was wearing dark pants. Trooper Ross testified that he activated his lights and sirens upon seeing a blue sport bike meeting the description of the speeding vehicle in the bulletin fail to stop at a stop sign

and several witnesses testified that that they observed the rider looking behind him in the direction of following police cruisers.

T.C.O. at 9. The trial court also identified inconsistencies in the evidence, including "the fact that virtually none of the witnesses mentioned that the shirtless driver had significant tattoos, as [Mummert] does," and "confusion in witness testimony regarding whether the rider was wearing a shirt and the fact that [Mummert] had a normal and somewhat lengthy conversation with Ms. Glass at the Lake Meade guard shack before proceeding into the housing development." *Id.* at 11, 11 n.9. The record demonstrates, however, that the motorcycle was traveling at high speeds, Notes of Testimony ("N.T."), 4/3/2014, at 24, and that Carol Glass talked to Mummert on his sport motorcycle at the gatehouse less than five minutes before the police arrived, *id.* at 119. Therefore, considering the motorcycle's high rate of speed, it is not unreasonable that eyewitnesses were unable to clearly identify whether the rider had tattoos on his torso, nor that Mummert would arrive at the gatehouse to have enough time to converse with Carol Glass before taking his bike into his basement before the police arrived.

It is well-settled that "[w]here the evidence is conflicting, it is the province of the fact finder to determine credibility; it is the prerogative of the fact finder to believe all, part or none of the evidence presented." *Commonwealth v. Ellis*, 549 A.2d 1323, 1334 (Pa. Super. 1988) (citation omitted). Here, the jury weighed the evidence and drew its own conclusions regarding its credibility. The trial court, in reviewing that determination,

assessed the strengths and weaknesses of the Commonwealth's case against Mummert and determined that the verdicts of guilt did not shock the court's conscience. Mummert points to no evidence which was "so clearly of greater weight [than those accepted by the jury] that to ignore them, or to give them equal weight with all the facts, is to deny justice." *Commonwealth v. Lewis*, 911 A.2d 558, 565 (Pa. Super. 2006). Accordingly, the trial court did not abuse its discretion, and we determine that Mummert's claim that the verdicts were against the weight of the evidence is frivolous.

In his second issue, Mummert would contend that the trial court "erred in allowing the Commonwealth to show a photograph of [Mummert's] motorcycle to each witness without any prior motorcycle line-up, or the motorcycle they saw, and allowing the Commonwealth to put a similar motorcycle in the courtroom for the witnesses to testify that it was similar to the one they saw." *Anders* Brief at 11-12. We disagree.

"In reviewing a trial court's ruling on the admissibility of evidence, our standard of review is one of deference. Questions concerning the admissibility of evidence are within the sound discretion of the trial court, and its discretion will not be reversed absent a clear abuse of discretion." *Commonwealth v. Thompson*, 106 A.3d 742, 754 (Pa. Super. 2014) (citations and internal quotation marks omitted).

Preliminarily, we observe that Mummert failed to object to the admission of the identification of his motorcycle at trial, and has thus waived this issue on appeal. *See* Pa.R.A.P. 302(a); *Commonwealth v. Olsen*, 82

A.3d 1041, 1050 (Pa. Super. 2013) ("A defendant must make a timely and specific objection at trial or face waiver of [his] issue on appeal.") (citation omitted).

Moreover, it is well-settled that identification of inanimate objects does not require the Commonwealth to proffer a line-up in order to be admissible:

> [T]here is no basis for applying the identification procedures applicable to suspects to testimony identifying inanimate objects and we decline to extend cases protecting the accused's rights to a fair pre-trial identification to the pre-trial identification of physical evidence. There is a difference between an identification of a defendant and of an inanimate object. The due process concerns implicated in identification of a defendant are not implicated in the identification of a vehicle. Identification of an accused tends to be direct proof of the case against him, while that of an inanimate object is only indirect proof of the defendant's guilt. . . .
>
> Thus[, in **Commonwealth v. Chmiel**, 889 A.2d 501, 523-24 (Pa. 2005),] the Court found that "the risks inherent in identification of inanimate objects go to the weight and sufficiency of the evidence instead of admissibility," and such identification evidence is properly submitted to the jury.

**Commonwealth v. Crork**, 966 A.2d 585, 588-89 (Pa. Super. 2009).

Accordingly, even if Mummert had preserved this issue for our review, the trial court did not err by permitting witnesses to identify Mummert's motorcycle without conducting a "motorcycle line-up." This issue is frivolous and would not merit relief.

In his third issue, Mummert contends that the trial court "erred by not allowing [Mummert] to remove his shirt to show his large tattoo to the jury,

when none of the witnesses referenced that the driver of the motorcycle had a tattoo." **Anders** Brief at 12. We disagree.

As previously stated, on review of questions of admissibility of evidence, we defer to the trial court's discretion. **See Thompson**, 106 A.3d at 754.

> Before evidence may be admitted, it must be authenticated. Pennsylvania Rule of Evidence 901 governs the authentication of evidence. Rule 901 states, "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Pa.R.E. 901(a).

**Commonwealth v. Smith**, 47 A.3d 862, 865 (Pa. Super. 2012) (case citations omitted); **see also** Pa.R.E. 901, Comment ("In some cases, real evidence may not be relevant unless its condition at the time of trial is similar to its condition at the time of the incident in question. In such cases, the party offering the evidence must also introduce evidence sufficient to support a finding that the condition is similar.").

Here, the trial court determined that Mummert had failed to demonstrate that his tattoos at the time of trial were the same since June 11, 2013, when he was riding the sport bike without a shirt. N.T. at 145. Absent such proof, the court concluded that evidence of what his tattoos looked like at trial could not be authenticated and was, therefore, unreliable and inadmissible. **Id.**; **see** T.C.O. at 15. Nonetheless, Mummert introduced the fact that he had tattoos on his torso at trial by specifically describing

them, which would further make the request to remove his shirt for the jury duplicative. N.T. at 158-59. Meanwhile, many of the eyewitnesses testified that they did not remember whether or not the operator of the sport bike had tattoos, so a specific showing of his tattoos where none of the witnesses denied that he had them would not be relevant to whether they were able to identify him as the operator. **See** N.T. at 63-64. Accordingly, the trial court did not abuse its discretion by not allowing Mummert to remove his shirt. This issue is frivolous and without merit.

Finally, Mummert contends that the trial court erred in denying his post-sentence motion. **Anders** Brief at 12. Specifically, Mummert challenges the denial of his post-sentence motion for an arrest of judgment or a new trial for the same reasons argued now on appeal. **Id.** at 12-13. We disagree.

We review a trial court's denial of a post-sentence motion for an abuse of discretion. **See Commonwealth v. Moore**, 978 A.2d 988, 993 (Pa. Super. 2009). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." **Commonwealth v. Belknap**, 105 A.3d 7, 10 (Pa. Super. 2014) (citation omitted).

As previously discussed, we have reviewed the trial court's disposition of Mummert's issues raised in his post-sentence motion and on appeal, and conclude that the trial court did not abuse its discretion where the issues he

raised are frivolous and without merit. Furthermore, upon independent review, we find no other non-frivolous basis for appeal. Therefore, we conclude that Mummert's appeal is wholly frivolous. ***O'Malley***, 957 A.2d at 1266.

Judgment of sentence affirmed. Petition for leave to withdraw as counsel granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/6/2015