J-S49041-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| CHARLENE MAY SMITH, | |
| Appellant | No. 223 MDA 2015 |

Appeal from the Judgment of Sentence of December 11, 2014
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s): CP-22-CR-0000935-2014

BEFORE:  BENDER, P.J.E., ALLEN AND OLSON, JJ.

MEMORANDUM BY OLSON, J.:                    **FILED AUGUST 20, 2015**

Appellant, Charlene May Smith, appeals from the judgment of sentence entered on December 11, 2014, following her bench trial convictions for two summary counts of harassment.[1]  Upon review, we affirm.

We briefly summarize the facts and procedural history of this case as follows.  On January 11, 2014, police, firefighters and members of emergency medical services (EMS) responded to Appellant's house upon receiving a telephone call that Appellant's husband (Mr. Smith) had gone into cardiac arrest.  Once inside, police and firefighters implemented standard practices to secure the area and to keep others from interfering

_____

[1]  18 Pa.C.S.A. § 2709.

with medical care. Mr. Smith was in a bedroom on the second floor. There was blood on Mr. Smith, the bed, and the wall. EMS suspected that a firearm might have been involved. Sergeant Mark Stonebreaker, an officer with the Highspire Police Department, told family members to remain downstairs. He positioned himself at the top of the stairs to secure the scene while EMS performed CPR on Mr. Smith. Appellant attempted to come upstairs, but Sergeant Stonebreaker directed her three or four times to stay on the first floor or he would arrest her. Appellant continued up the stairs and Sergeant Stonebreaker told her that she could not see Mr. Smith. Appellant clenched her fists, continued to ascend the stairs, and said, "I'm gonna see my husband, you can't stop me." A brief scuffle ensued. Sergeant Stonebreaker physically moved Appellant down a few stairs, but she steadfastly held onto the banister. Sergeant Stonebreaker told Appellant to remove her hand from the railing or he would use a taser on her hand. When Appellant refused, Sergeant Stonebreaker tased Appellant's hand, she released the banister, screamed in pain, yelled profanities at Sergeant Stonebreaker, and proceeded back downstairs. The EMS workers, hearing the fray between Appellant and Sergeant Stonebreaker and fearing for their safety, barricaded the bedroom door where they were performing CPR. Ultimately, EMS was unable to resuscitate Mr. Smith. The coroner later determined that Mr. Smith died of complications from lung cancer.

The Commonwealth initially charged Appellant with resisting arrest, criminal attempt – obstructing emergency services, harassment – subjecting

others to physical contact, harassment – course of conduct with no legitimate purpose, and obstructing emergency services. Prior to trial, the Commonwealth withdrew all of the charges, except the two summary harassment offenses. Following a bench trial, the court found Appellant guilty of both charges. The trial court sentenced Appellant to two consecutive terms of three months' probation. This timely appeal resulted.[2]

On appeal, Appellant presents the following issues for our review:

A. Whether the Commonwealth presented insufficient evidence to prove each and every element of [s]ummary [h]arassment where [] Appellant did not strike, shove, kick or cause physical contact nor attempt[ed] to do so, nor threaten[ed] to do so, and where [] Appellant's only intent was to see her dead husband?

B. Whether the Commonwealth presented insufficient evidence to prove [h]arassment by a course of conduct where [] Appellant engaged in one single act of attempting to see her dead husband?

Appellant's Brief at 6.

Appellant's issues challenge the sufficiency of the evidence to support each of her convictions for harassment. Accordingly, we will examine them

---

[2] Appellant filed a notice of appeal on Monday, January 11, 2015. The notice of appeal was timely because Appellant had 30 days from the date of judgment of sentence to file her notice of appeal and the thirtieth day fell on a Saturday. *See* Pa.R.A.P. 903 (time for appeal); *see also* 1 Pa.C.S.A. § 1908 (computation of time). On January 14, 2015, the trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant complied timely on February 2, 2015. On February 25, 2015, the trial court issued an opinion pursuant to Pa.R.A.P. 1925(a).

together.[3]  First, Appellant claims that she did not engage in a course of conduct to support her conviction under 18 Pa.C.S.A. § 2709(a)(3).  More specifically, she claims that her actions "consisted of a single attempt to proceed up the steps of her own house in order to see her dead/dying husband."  *Id.* at 12.  Appellant claims that the incident with Sergeant Stonebreaker lasted anywhere from one to 10 minutes.  *Id.* at 12, 16. Next, Appellant claims that "at no point did [she] strike, kick or otherwise subject another to physical contact" to support her conviction pursuant to 18 Pa.C.S.A. § 2709(a)(1).  *Id.* at 13.  Appellant argues that Sergeant Stonebreaker was the aggressor.  *Id.* Thus, Appellant argues, "the issue becomes whether she attempted or threatened" physical contact.  *Id.* at 14. Appellant suggests that the EMS misapprehended the medical emergency as possibly involving a gunshot wound and, as a result, "the EMS and Officer Stonebreaker incorrectly and without cause assumed [] Appellant was a threat to her dying/dead husband or the EMS and police."  *Id.*

Our standard of review is well settled:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there

---

[3] Despite presenting the issues as separate questions for review, Appellant argues both issues simultaneously.  For future reference, we direct counsel to our rules of appellate procedure.  *See* Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued[.]"). However, because there is no impediment to our review, we will examine both issues as presented.

is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Thompson***, 106 A.3d 742, 756 (Pa. Super. 2014)

(citation, brackets, and original emphasis omitted).

The trial court convicted Appellant of two different counts of harassment, 18 Pa.C.S.A. §§ 2709(a)(1) and (a)(3), which provide in pertinent part:

**(a) Offense defined.--**A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person:

(1) strikes, shoves, kicks or otherwise subjects the other person to physical contact, or attempts or threatens to do the same;

\*　　　\*　　　\*

(3) engages in a course of conduct or repeatedly commits acts which serve no legitimate purpose[.]

18 Pa.C.S.A. § 2709.

"An intent to harass may be inferred from the totality of the circumstances." *Commonwealth v. Cox*, 72 A.3d 719, 721 (Pa. Super. 2013). "'Course of conduct' means a pattern of actions composed of more than one act over a period of time evidencing a continuity of conduct, a single act will not support a conviction." *Commonwealth v. Battaglia*, 725 A.2d 192, 194 (Pa. Super. 1999).

In this case, regarding Section 2709(a)(1), the trial court determined:

> Appellant, while understandably upset as she suspected her husband was dead and wanted to be near him, was angry and red-faced. She ascended the stairs of the home despite repeated warnings not to do so. She clenched her fists in anger and even raised one hand as if to strike the officer. All of this, she did with the intent to alarm Sgt. Stonebreaker enough to move him out of her way. Indeed, it is clear that the EMS workers, the firefighters and the police officer on the scene were all alarmed by Appellant's actions. They all testified that they feared for either their own safety or the safety of the EMS workers and the safety of the patient.
>
> Certainly raising her fist was a threat or an attempt to subject Sgt. Stonebreaker to physical contact and, while he acknowledged that he did ultimately initiate physical contact, he felt threatened and he was subjected to physical contact and her resistance to removing her during the tussle on the landing.

Trial Court Opinion, 2/25/2015, at 9-10.

Regarding Section 2709(a)(3), pertaining to a course of conduct, the trial court concluded:

> Appellant continued to ascend the stairs; she grasped the spindles of the banister to prevent Sgt. Stonebreaker from

- 6 -

removing her and did this all for no legitimate purpose. While she testified that her purpose was to be with her dead husband, and we sympathize with her, there is no legitimate purpose, there is no constitutionally protected right, to disobey a police officer who is trying to allow EMS workers to revive [her] husband. Her actions actually forced the EMS workers to stop attempting resuscitation in order to barricade themselves in the bedroom with her husband.

*Id.* at 10.

We agree that there was sufficient evidence to support both harassment convictions. Captain Brian Ceace, of the Highspire Fire Department, was a first responder on the scene. N.T., 12/102014, at 6. Captain Ceace testified that Sergeant Stonebreaker was on hand to secure the scene. *Id.* at 15. Captain Ceace testified that Sergeant Stonebreaker "asked [Appellant] to stay downstairs [and] [l]et EMS do their job." *Id.* at 17. Sergeant Stonebreaker repeated himself three or four times. *Id.* When Appellant persisted, Sergeant Stonebreaker told her that he would have to arrest her if she continued. *Id.* at 18. Captain Ceace also told Appellant "to please listen to the officer." *Id.* at 19. Appellant continued up the stairs and held onto the railing. *Id.* at 21. Sergeant Stonebreaker told Appellant to remove her hands from the banister or he would use a taser. *Id.* at 21-22. Captain Ceace opined that Sergeant Stonebreaker used every means necessary to diffuse the situation before ultimately tasing Appellant. *Id.* at 24. Captain Ceace also testified that he witnessed Appellant "ball up her fists" and it was possible that she was going to take a swing at Sergeant Stonebreaker. *Id.* at 31.

- 7 -

Sergeant Stonebreaker testified similarly. He stated that he pled with Appellant not to come upstairs and to allow EMS to do their job uninterrupted. *Id.* at 113-114. Appellant continued up the stairs, stating, "I'm gonna see my husband and you can't stop me." *Id.* at 116. Sergeant Stonebreaker described Appellant as "very red in the face, very angry." *Id.* He "could see that her hands [were] clenched into fists [and] her teeth were clenched." *Id.* "[A]t one point, she brought a hand up [] to strike [Officer Stonebreaker] or push past" him. *Id.* at 128. Sergeant Stonebreaker "was expecting an attack was imminent." *Id.* When he tried "to get her turned around to get her to go back down the steps[,]" there was a brief "tussle on the staircase[.]" *Id.* at 117. Appellant grabbed the banister, would not let go, and Sergeant Stonebreaker warned her that he would have to arrest her. *Id.* at 118. Thereafter, Sergeant Stonebreaker again warned Appellant "at least on three occasions" he would use a taser. *Id.* at 122. When Appellant still refused, Sergeant Stonebreaker used the taser on Appellant's hand. *Id.*

The foregoing establishes that police told Appellant that she could not come upstairs so as not to interfere with EMS. She exclaimed that she was going to do so despite these warnings and that police could not stop her. When we examine these words in conjunction with Appellant's physical actions – continuing up the stairs despite repeated warnings, clenching her fists and teeth, and raising her arm to the officer – it is clear that Appellant attempted or threatened physical contact under Section 2709(a)(1). In addition, while Sergeant Stonebreaker may have physically touched

- 8 -

Appellant first, Sergeant Stonebreaker testified that a brief tussle resulted. Hence, there was physical contact by Appellant despite police commands. Moreover, regarding course of conduct, the record belies Appellant's characterization of the altercation. While she claims there was a single attempt to proceed up the steps, it is obvious from the record that she continued to do so multiple times despite continued warnings, police intervention, and threats of arrest and being tased. This was not a single attempt at climbing the stairs and then acquiescence. Appellant's persistence shows she repeatedly committed acts which served no legitimate purpose[4] showing a course of conduct to support a conviction under Section 2709(a)(3). Accordingly, we reject Appellant's claim that there was insufficient evidence to support both summary harassment convictions.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/20/2015

---

[4] Appellant does not challenge the trial court's determination that her actions served no legitimate purpose. Thus, we need not address this element of harassment under, Section 2709(a)(3).

- 9 -