J-S10043-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JOSE MARTE CASTRO | |
| Appellant | No. 2857 EDA 2015 |

Appeal from the Judgment of Sentence dated May 7, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0006739-2014

BEFORE: BENDER, P.J.E., DUBOW, J., and SOLANO, J.

MEMORANDUM BY SOLANO, J.:                    **FILED JUNE 23, 2017**

Appellant Jose Marte Castro appeals from the judgment of sentence following his convictions for aggravated assault, possession of an instrument of crime, terroristic threats, simple assault, and recklessly endangering another person,[1] all of which resulted from his attack on his supervisor by swinging a machete or similar object at the supervisor's head. Appellant contends that the weight of the evidence presented at trial was contrary to the verdict. We affirm.

_____

[1] 18 Pa.C.S. §§ 2702(a), 907(a), 2706(a)(1), 2701(a), and 2705, respectively.

The case was tried before a judge[2] on conflicting accounts of a confrontation at Appellant's place of work, an appliance store, on April 22, 2014. According to testimony by the supervisor, Edgar Suarez,[3] the confrontation began as a heated argument between Mr. Suarez and Appellant's cousin, Victor,[4] who also was employed at the appliance store, regarding money that was owed.[5] Appellant interceded and approached Mr. Suarez, and there then was more argument that included exchanges of profane insults. Eventually, Appellant told Mr. Suarez, "I'm going to cut your head off."

Mr. Suarez testified that Appellant then exited the store, went to the delivery van outside, and returned with a machete that Appellant had shown to Mr. Suarez previously.[6] Mr. Suarez picked up a small ax and metal grate

_____

[2] Appellant waived his right to a jury trial. His bench trial was held on February 19, 2015.

[3] Interpreters were needed for both the testimony of Mr. Suarez and Appellant.

[4] Victor's last name is not revealed in the record.

[5] Both parties testified that the argument was initially about a payment that the cousin felt Mr. Suarez owed him and then became an argument about water bottles that Appellant and his cousin had taken from the store without paying for them.

[6] The supervisor described this machete as "like a knife, but a bigger version of a knife," with a blade that was approximately two feet long, the "front" of which was sharp. N.T. at 24. He said that the blade was "dark and had a visible sharp end. One side is sharp. The other side is not sharp." *Id.* at 53. When asked how long the sharp part was, the supervisor stated, "It's like
*(Footnote Continued Next Page)*

to arm himself.[7] Appellant pointed the machete at Mr. Suarez, slowly approaching from twenty feet away, and, after more argument, eventually swung the machete at Mr. Suarez's head. The blade came within six inches of Mr. Suarez's head, but Mr. Suarez raised the ax, which he was holding by its metal head, and intercepted the swing of the machete, so that the blade cut into the rubber handle of the ax instead. Appellant's cousin and Mr. Suarez's girlfriend, who was also present, then pushed Appellant out of the store. Mr. Suarez called 911, and the police arrived. Mr. Suarez was fired from the store later that day.

The Commonwealth also presented testimony by Officer Alfonso Powers, who responded to the 911 call. The officer testified that when he arrived, Mr. Suarez seemed upset and scared. An ax was recovered from the store, and it had an indentation on the handle that was consistent with being used for blocking a blow. A photograph of the ax was introduced into evidence.[8] No machete was ever recovered.

_(Footnote Continued)_ ———————————

half an inch," and he responded affirmatively when asked whether "just the tip is sharp." *Id.* The supervisor did not know the composition of the handle, and, when asked whether the handle could be flimsy or wobbly, testified, "I wouldn't know. I never touched it. I never had it in my hands. I never grabbed it. And he was moving his hand. Like it could be an optical illusion or something, I don't know." *Id.* at 35.

[7] The ax was a fireman's ax which was kept near the fire extinguisher, and the grate was part of a stove top.

[8] The single color photograph of the ax shows a black rubber handle with a mark on it, but the mark is not clear. *See* Appellant's Ex. 1.

- 3 -

Appellant testified on his own behalf. He stated that he and Mr. Suarez had had a good working relationship. He said that he intervened in the argument between his supervisor and his cousin to prevent them from physically fighting. Appellant claimed that when he intervened, Mr. Suarez pushed Appellant and armed himself with an ax and a piece of metal, causing Appellant to respond by grabbing a two-and-a-half foot long piece of plastic from the top of a nearby refrigerator. Appellant claimed that the plastic was shaped somewhat like a machete, but that he did not have a machete. Appellant said he never swung his object and that, after the confrontation calmed down, Appellant left. Appellant reported to police later that evening and returned to work the day following his release.[9]

The trial court found Appellant guilty of the aforementioned charges. Just before the court rendered its verdict, it stated, "I agree with the Commonwealth that there's more corroboration for the complaining witness' testimony than there is for the defendant's testimony. There are more inconsistencies also with[in] the defendant's testimony. And for that reason, I will find him guilty." N.T., 2/19/15, at 83. The court graded the assault as a second-degree felony ("F2"), and in connection with that decision, had the following colloquy with Appellant's counsel:

_____

[9] Appellant also presented a stipulation that his uncle would testify that Appellant has a reputation in the community for peacefulness, nonviolence, and lawfulness.

[The court]: And although I think the Commonwealth's argument was on point and accurate, I am going to grade it as an F2 because of his character.

[Appellant's counsel]: Your Honor, I would just ask that if you're going to find him guilty, that you consider it as a simple assault with physical menace, rather than an aggravated assault.

[The court]: If you want me to reconsider, I'll go back to an F1 because that's what it is. Do you want me to reconsider?

[Appellant's counsel]: No, Your Honor.

N.T. at 84.[10]

On May 7, 2015, the court sentenced Appellant to three to six months of incarceration (to be served on weekends, with eligibility for parole after thirty days), followed by thirty-six months of probation. Appellant filed a timely post-sentence motion, which was denied by operation of law, and a timely notice of appeal. *See generally* Trial Ct. Op., 5/28/16, at 1-10.

Appellant presents a single issue for our review: Did the trial court abuse its discretion by failing to grant [A]ppellant's post-sentence motion for a new trial, as the verdict was so contrary to the weight of the evidence as to shock one's sense of justice?" Appellant's Brief at 3.

---

[10] We are troubled that the trial court appeared to threaten to increase the grading of the offense if Appellant's counsel did not withdraw his motion for reconsideration. The court's flippant remark was improper, and we trust that the court reduced the grade of the offense on the basis of the evidence and without regard to defense counsel's withdrawal of his motion. Because no party seeks relief on the basis of this comment, we need not address it further.

Our standard of review of a challenge to the weight of the evidence is as follows:

> Where the trial court has ruled on a weight claim, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, our review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Thompson*, 106 A.3d 742, 758 (Pa. Super. 2014) (brackets, quotation marks, and internal citations omitted), *appeal denied*, 134 A.3d 56 (Pa.), *cert. denied*, 132 S. Ct. 106 (2016). "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." *Commonwealth v. Hairston*, 84 A.3d 657, 664-65 (Pa.), *cert. denied*, 135 S. Ct. 164 (2014).

Appellant first claims that the physical evidence did not corroborate the Commonwealth's version of events. Appellant's Brief at 11. He argues that: Mr. Suarez's description of the alleged weapon did not match the common description of a machete,[11] a machete was never recovered, and the imprint left on the rubber handle of the ax does not reflect the severe damage a machete would cause. *Id.* at 12-14.

---

[11] Appellant refers to Mr. Suarez's testimony describing the machete as having only a one-and-a-half inch tip and statement that he did not know whether its handle was flimsy.

In a second argument, Appellant asserts that the evidence showed he was defending his cousin from Mr. Suarez. Appellant's Brief at 15.[12] According to Appellant, he intervened because Mr. Suarez was speaking heatedly to his cousin; Mr. Suarez put his hands on Appellant's shoulders when Appellant approached them; and Mr. Suarez picked up an ax and a piece of metal before Appellant armed himself with the piece of plastic. *Id.* at 16-17. Appellant suggests that his use of force therefore was justified to protect his cousin from attack by Mr. Suarez. *Id.* He adds that the fact that Mr. Suarez was fired and Appellant was not fired suggests that Appellant was not the aggressor. *Id.* Appellant asserts that when a defendant's own

_____

[12] The Crimes Code explains that the use of force upon another person in order to protect a third person is justifiable when:

> (1) the actor would be justified under section 505 (relating to use of force in self-protection) in using such force to protect himself against the injury he believes to be threatened to the person whom he seeks to protect;

> (2) under the circumstances as the actor believes them to be, the person whom he seeks to protect would be justified in using such protective force; and

> (3) the actor believes that his intervention is necessary for the protection of such other person.

18 Pa.C.S. § 506(a). Section 505 permits the use of force "when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion," but not "unless the actor believes that such force is necessary to protect himself against death, serious bodily injury, kidnapping or sexual intercourse compelled by force or threat," or if "the actor, with the intent of causing death or serious bodily injury, provoked the use of force against himself in the same encounter." 18 Pa.C.S. § 505(a), (b)(2)(1).

testimony is the only evidence of a defense, the Commonwealth must disprove the defense and may not simply rely on the fact-finder's disbelief of the defendant's testimony. *Id.* at 22 (citing *Commonwealth v. Smith*, 97 A.3d 782, 788 (Pa. Super. 2014)).

More generally, Appellant argues that his version of events should have been accepted because "[i]t [is] patently more believable that [Mr. Suarez] would be upset because Victor was trying to cheat him than that [A]ppellant would fly into a violent rage against [Mr. Suarez] for no reason." Appellant's Brief at 20-21. He points to evidence of his good character and the fact that he voluntarily reported to the police on the evening of the incident to bolster his credibility and assertion of innocence. *Id.* at 17-19. Appellant also complains that the trial court's statement that there was "more corroboration" for Mr. Suarez's testimony than for that of Appellant shows that the court weighed the evidence by a preponderance standard, rather than beyond a reasonable doubt. Appellant complains further that the court improperly considered Appellant's good character only when determining to grade the aggravated assault conviction as a second degree felony rather than a first degree felony. *Id.* at 14-15, 22.

As we have previously stated:

A new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail. In this regard, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the [trial] court.

*Thompson*, 106 A.3d at 758–59. The Supreme Court has explained:

> A new trial should not be granted because of a mere conflict in the testimony . . . Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

*Commonwealth v. Widmer*, 744 A.2d 745, 752 (Pa. 2000) (quotation marks and citations omitted).

In an opinion, the trial court explained its verdict as follows:

> The [c]ourt, sitting as fact finder, evaluated the evidence presented at trial and reached its verdict. As outlined above, the physical and testamentary evidence established that [Appellant] put himself in the middle of an argument over money between [Mr. Suarez] and his cousin Victor at the appliance store where they were all employed. [Mr. Suarez] credibly testified that he was upset about Victor's refusal to pay for the bottles of water taken by [Appellant] and Victor. [Mr. Suarez] admitted to using profanity and having an ax and a metal grate in his hands. His account of the incident was also corroborated by Officer Powers as the recovered ax had an indentation on it supporting [Mr. Suarez's] testimony that he used it to block the machete swung at his head by [Appellant]. Additionally, Officer Powers testified that when he arrived on the scene [Mr. Suarez] was very upset and very scared.
>
> Moreover, this [c]ourt found that there were inconsistencies in [Appellant's] testimony and less corroboration than that of [Mr. Suarez's] testimony. [Appellant] initially stated that [Mr. Suarez] did not swing at Victor, then that [Mr. Suarez] did swing at Victor, and finally explained that he believed that [Mr. Suarez] wanted to swing at Victor. [Appellant] repeatedly stated that he stepped into the argument to prevent [Mr. Suarez] and Victor from fighting, but instead he escalated the situation by coming towards [Mr. Suarez] and grabbing an object. [Appellant] also stated that he and [Mr. Suarez] were friends and that there was no need to call the police following this incident because things calmed down. However, [Mr. Suarez] called 911 and filed a report which negates any positive

> perception of their relationship. As outlined above, Officer Powers noted that [Mr. Suarez] was upset and scared.
>
> Consequently, the verdict was not against the weight of the evidence. The [c]ourt considered the stipulation to [Appellant's] good character, but weighed with his inconsistent testimony, found [Appellant]'s actions to be provocation and contrary to any intent to pacify the situation. The verdict was not the result of partiality, prejudice, bias, or ill will, and is supported by both the law and the record.

Trial Ct. Op. at 12-14 (citations to the record omitted).

We discern no abuse of discretion in the trial court's analysis. Where the testimony conflicted, the trial court credited Mr. Suarez's version of events — which, as the finder of fact, it was free to do. We are unable to substitute our judgment for that of the fact-finder or to grant a new trial based on a mere conflict in testimony. *Widmer*, 744 A.2d at 752. Although Appellant contends that certain facts should fall in his favor, those facts are not "so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." *Id.*

For example, the failure to recover a machete does not prove that Appellant did not have a machete, as Appellant could have left the premises with the machete and then stored or disposed of it. Nor do alleged disparities between Mr. Suarez's description of the weapon and the typical shape of a machete prove that Appellant did not attack Mr. Suarez with a dangerously sharp knife. Although Mr. Suarez stated that only the "tip" of the machete was sharp and that the tip was only one-and-a-half inches long, he could have been describing, through the interpreter, the blade side of the

machete. Mr. Suarez's overall testimony comports with a description of a long sharp knife, and the trial court could reasonably have found it unlikely for Mr. Suarez to have confused a machete that he had previously seen for the piece of plastic Appellant claims to have retrieved from atop the refrigerator. Although the divet made by Appellant's weapon in the rubber handle of the ax is not clearly visible in the photograph introduced into evidence, the testimony regarding the indentation in the handle was buttressed by the testimony of Officer Powers.

Similarly, the evidence of Appellant's good character and the fact that he surrendered were not of such clearly greater weight as to render a guilty verdict shocking to the conscience. *Thompson*, 106 A.3d at 758–59. Nor is it inherently unbelievable that Appellant would escalate an argument which concerned him and in which Mr. Suarez insulted Appellant's cousin. We therefore find that the trial court did not abuse its discretion by implicitly concluding that Mr. Suarez's testimony was not so vague, tenuous, and uncertain that a guilty verdict would be unsupportable. *Id.*

The trial court also acted properly in concluding that Appellant did not act in defense of Victor. The court based its conclusion on Mr. Suarez's testimony that Appellant was the aggressor in the confrontation and that Appellant escalated the argument by grabbing and swinging the knife. Appellant's reliance on *Smith*, 97 A.3d at 788, is thus misplaced. While the Court in *Smith* held that the Commonwealth must present evidence to

disprove a defense claim beyond a reasonable doubt and may not rely solely on the fact-finder's disbelief of the defendant's testimony, *id.*, here the Commonwealth presented the testimony of Mr. Suarez, along with a photograph of the ax handle and testimony by Officer Powers. The fact-finder acted well within its discretion to disbelieve Appellant's defense claim.

To the extent Appellant's contention that the trial court improperly weighed the evidence by a preponderance standard can be construed as a weight claim, we discern no basis for relief. The trial court merely said that there was more reason for it to believe one witness than the other. The case was presented in a way that required the court either to believe Mr. Suarez's version of the events or that of Appellant, and once the court concluded that Mr. Suarez was the more credible witness, the court was free to believe all of his testimony. *See Commonwealth v. Tielsch*, 934 A.2d 81, 94 (Pa. Super. 2007) ("The fact-finder, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence"), *appeal denied*, 952 A.2d 81 (Pa.), *cert. denied*, 555 U.S. 1072 (2008).

Lastly, Appellant complains that the trial court did not give sufficient weight to his good character evidence. He suggests that if the court had properly considered that evidence, it would have found him innocent of the charges. But as the trial court explained in its opinion, it considered Appellant's character in conjunction with the other testimony that was before

it, including Appellant's "inconsistent testimony" and actions that the court found "to be provocation and contrary to any intent to pacify the situation." Trial Ct. Op. at 13-14. To the extent that Appellant's argument can be construed as a weight claim, it was well within the trial court's discretion to weigh the evidence as it deemed fit. *See Tielsch*, 934 A.2d at 94. For the aforementioned reasons, we hold that the trial court did not abuse its discretion in deciding whether the verdict rendered was contrary to the weight of the evidence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/23/2017