J-E01001-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| EDUARDO PEREZ | : | |
| | : | |
| Appellant | : | No. 2537 EDA 2022 |

Appeal from the Judgment of Sentence Entered September 22, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0000824-2017

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| EDUARDO PEREZ | : | |
| | : | |
| Appellant | : | No. 2538 EDA 2022 |

Appeal from the Judgment of Sentence Entered September 22, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0000825-2017

BEFORE: LAZARUS, P.J., BOWES, J., PANELLA, P.J.E., DUBOW, J.,
McLAUGHLIN, J., KING, J., SULLIVAN, J., BECK, J., and LANE, J.

MEMORANDUM BY LAZARUS, P.J.: **FILED AUGUST 27, 2025**

Eduardo Perez appeals from the judgments of sentence,[1] entered in the

Court of Common Pleas of Philadelphia County, following his convictions at

_____

[1] On October 7, 2022, Perez filed two timely notices of appeal, each of which included both of the above-captioned docket numbers, CP-51-CR-0000824-2017 (No. 824-2017) and CP-51-CR-0000825-2017 (No. 825-2017), in
*(Footnote Continued Next Page)*

No. 824-2017 of one count each of rape of a child,[2] involuntary deviate sexual intercourse (IDSI),[3] unlawful contact with a minor,[4] endangering welfare of children (EWOC),[5] and indecent assault – person less than 13 years of age,[6] and at No. 825-2017 of one count each of unlawful contact with a minor, EWOC, and indecent assault – person less than 13 years of age.  After careful review, we affirm.

_____

violation of our Supreme Court's dictates in **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018) (requiring appellants to file separate notices of appeal when a single order resolves issues arising on more than one lower court docket).  **But see Commonwealth v. Young**, 265 A.3d 462 (Pa. 2021) (permitting appellate court to allow for correction when timely appeal is erroneously filed at only one docket); Pa.R.A.P. 902 (stating that "[f]ailure of [an appellant] to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but the appeal is subject to such action as the appellate court deems appropriate, which may include, but is not limited to, remand of the matter to the lower court so that the omitted procedural step may be taken.").  Thus, on February 6, 2024, this Court issued an Order directing Perez to file amended notices of appeal, one at each docket, in compliance with **Walker** and **Young**.  On February 23, 2024, Perez filed compliant notices of appeal.  We have corrected the caption accordingly.

Additionally, on January 11, 2023, Perez filed an application to consolidate these appeals, which this Court granted on August 18, 2023.  **See** Pa.R.A.P. 513.

[2] 18 Pa.C.S.A. § 3121(c).

[3] **Id.** at § 3123(a)(1).

[4] **Id.** at § 6318(a)(1).

[5] **Id.** at § 4304(a)(1).

[6] **Id.** at § 3126(a)(7).

In light of the procedural history of this case, we briefly summarize the events leading up to trial. In the summer of 2016, D.M. and C.R. (both 7-year-old children at the time of the incidents) were best friends and lived across the street from one another. D.M. and C.R. would frequently sleep over at each other's houses. C.R. lived with her grandmother, mother, younger brother, and Perez, C.R.'s stepfather. When D.M. would sleep over at C.R.'s house, they slept in either the bedroom with C.R.'s grandmother or in C.R.'s younger brother's bedroom. Perez's bedroom was located down the hall from both bedrooms.

Several months after the summer of 2016, D.M. disclosed to her mother that, during the sleepovers at C.R.'s house, Perez had, over the course of the summer, watched D.M. change into her bathing suit; entered the bedroom, took off D.M.'s nightgown, and touched her vagina; inserted his penis into D.M.'s vagina; kissed both girls; and touched both girls' vaginas with his penis.

D.M.'s mother took her to the hospital and D.M. submitted to interviews with various personnel from the Philadelphia Department of Human Services (DHS). In addition, Carolina Castano, an employee of the Philadelphia Children's Alliance (PCA) trained in performing forensic interviews with child sexual abuse victims, conducted a video-recorded interview of D.M. in which D.M. discussed the abuse.

Based upon D.M.'s reports, Sharina Johnson, a DHS investigator, met with C.R. twice at C.R.'s home. C.R. denied that Perez had abused her. C.R. also denied the occurrence of any abuse during a PCA forensic interview. On

December 14, 2016, Johnson interviewed C.R. an additional time, at her school, at which point C.R. admitted to having been abused by Perez. After this interview, DHS recommended that C.R. see a child abuse expert. On December 21, 2016, Dr. Maria McColgan, a pediatrician specializing in child abuse cases, conducted a physical examination of C.R., during which C.R. made statements to Dr. McColgan about Perez and the abuse.

On December 31, 2016, Perez was arrested and charged at No. 824-2017 with respect to the alleged abuse of D.M., and at No. 825-2017 with respect to the alleged abuse of C.R. The Commonwealth filed a motion to consolidate the cases, which the Honorable Glynnis Hill granted. Judge Hill presided over Perez's first trial.

Prior to his first trial, and relevant to the instant appeal, Perez filed a pretrial motion in which he challenged Dr. McColgan's testimony as hearsay without an exception. Specifically, Perez argued that Dr. McColgan's testimony was inadmissible under Pa.R.E. 803(4), pertaining to medical diagnosis and treatment hearsay exception, because C.R.'s statements to Dr. McColgan were made in anticipation of litigation and at least some of the statements were not made for the purpose of diagnosis or treatment of C.R. Judge Hill conducted a pretrial hearing, after which he denied Perez's motion.

On June 19-22, 2018, Perez proceeded to a jury trial, at which, *inter alia*, D.M., D.M.'s mother, Johnson, Castano, and Dr. McColgan testified for the Commonwealth. C.R., who was living in another state with her biological father at the time of trial, did not testify. Nevertheless, Dr. McColgan testified

- 4 -

regarding C.R.'s description of the abuse pursuant to the medical diagnosis treatment exception to the hearsay rule. *See* Pa.R.E. 803(4). The Commonwealth also played for the jury a video recording of Castano's PCA interview of D.M. pursuant to the Tender Years Hearsay Act (TYHA). *See* 42 Pa.C.S.A. § 5985.1. Perez did not testify.

At the conclusion of the June 19-22, 2018 trial, the jury found Perez guilty of the above-stated offenses. On November 9, 2018, the trial court sentenced Perez to an aggregate period of 14 to 28 years' incarceration, followed by 5 years' probation. Perez filed a timely post-sentence motion, which was denied by operation of law. Subsequently, Perez filed a timely notice of appeal to this Court. *See Commonwealth v. Perez*, 241 A.3d 454 (Pa. Super. 2020) (Table).

On appeal before this Court, Perez argued, *inter alia*, that the trial court erred in allowing Dr. McColgan to testify that C.R. had identified Perez as the perpetrator of abuse, because such testimony did not fall under the medical diagnosis and treatment exception to the hearsay rule and that the trial court erred in allowing the Commonwealth's TYHA evidence where the Commonwealth had failed to provide notice of such evidence. *See id.* Relevantly, this Court found that Perez had waived his challenge to Dr. McColgan's testimony, but, nevertheless, vacated Perez's judgment of sentence and remanded for a new trial because the Commonwealth had failed to provide adequate notice of the TYHA evidence. *See id.*

Upon remand, Perez's case was reassigned to the Honorable Kai N. Scott. On January 14, 2022, Perez filed a motion *in limine* challenging, *inter alia*, Dr. McColgan's testimony as evidence that does not fall under a hearsay exception. The relevant statements are included in Commonwealth Exhibit 1, which contains the discussion between Dr. McColgan and C.R.:

Dr. McColgan: What did he do?

C.R.: I don't know. He touch my private part.

Dr. McColgan: What did he touch it with?

C.R.: His hands and his front private part.

Dr. McColgan: Tell me about when he touched with his hand[,] how old were you?

C.R.: I was about 5.

Dr. McColgan: Did it happen one time or more than one time?

C.R.: More than one time.

Dr. McColgan: On top of your clothes or under your clothes?

C.R.: Under.

Dr. McColgan: Tell me about when he touched you with his private part. . . . Did it hurt?

C.R.: Yes.

Dr. McColgan: Did it bleed?

C.R.: No.

Dr. McColgan: Where did it touch?

C.R.: Here and my bottom.

Dr. McColgan:  Anywhere else?

C.R.:  Here (indicating chest) and it hurt.  He did this ([C.R.] squeezed her hands over her chest).

Dr. McColgan:  Did he touch you with his private part one time or more than one time?

C.R.:  More than one time.  I told you.

Dr. McColgan:  When was the last time?

C.R.:  The last time was when he moved.  Something watery came out looked like slobber.  It was white.

Dr. McColgan:  Then what would he do.

C.R.:  He wiped it off with his towel.  No his shirt.

Dr. McColgan:  What else would he do?

C.R.:  He touched me.  When he touched me, he put his private part in real hard and it hurt.

Dr. McColgan:  Did he ever put his private part in your mouth?

C.R.:  Yes more than one time.

Dr. McColgan:  Tell me about that?

C.R.:  Disgusting.

Dr. McColgan:  What was disgusting?

C.R.:  I told you watery.

Dr. McColgan:  What did it taste like?

C.R.:  Like something nasty.  Slobber I told you.  He put his slobber on his private part.

Dr. McColgan:  Then what would he do?

- 7 -

C.R.: He put it in my private part.

Commonwealth Exhibit 1, at 1-2 (unpaginated, cleaned up, redacted).

On January 19, 2022, Judge Scott conducted a pre-trial hearing, at which Perez presented argument on Dr. McColgan's testimony. During Perez's argument, the Commonwealth informed Judge Scott that Judge Hill had previously ruled on this claim prior to Perez's first trial and argued that Judge Scott was bound by Judge Hill's prior decision. *See* N.T. Omnibus Pre-Trial Motion Hearing, 1/19/22, at 45-55. Judge Scott agreed that she was bound by the law of the case doctrine and, consequently, denied Perez's motion.

On January 24-26, 2022, Perez proceeded to a second consolidated jury trial, at which the Commonwealth presented, *inter alia*, Dr. McColgan's hearsay testimony of C.R.'s statements. At the conclusion of trial, the jury convicted Perez of the above-mentioned offenses. Judge Scott deferred sentencing and ordered the preparation of a pre-sentence investigation report.

On September 22, 2022, Judge Scott conducted a sentencing hearing, after which she sentenced Perez, at No. 824-2017, to a period of 14 to 28 years in prison for his conviction of rape of a child, 14 to 28 years in prison for his conviction of IDSI, and five years' probation for his remaining convictions of unlawful contact with a minor, EWOC, and indecent assault. Perez's sentences at No. 824-2017 were imposed concurrently to each other. At No. 825-2017, Judge Scott sentenced Perez to a period of two to four years in prison for his conviction of unlawful contact with a minor, and two periods of five years' probation for his convictions of EWOC and indecent assault.

Judge Scott imposed Perez's sentences at No. 825-2017 concurrently to each other. Judge Scott imposed Perez's sentences at both dockets concurrently to each other, resulting in an aggregate period of 14 to 28 years in prison, followed by 5 years' probation.

Perez filed timely notices of appeal.[7] Perez now raises the following claims for our review:

> 1. Did the motions court err when, after a conviction was reversed and the judgment of sentence vacated with the matter returned for a new trial, it declared itself bound by pre-trial evidentiary rulings from the first trial?
>
> 2. Did the [trial] court err in admitting a non-testifying child complainant's out-of-court accusations against [Perez] pursuant to [Rule] 803(4), where those statements were made not in the interest of medical treatment but as part of an investigative interview to facilitate litigation?

Brief for Appellant, at 3.

In his first claim, Perez argues that Judge Scott erred in concluding that she was required to deem Dr. McColgan's testimony admissible at Perez's

_____

[7] Judge Scott did not file a Pa.R.A.P. 1925(a) opinion due to her appointment to the United States District Court for the Eastern District of Pennsylvania. **See** Statement in Lieu of 1925(a) Opinion, 1/13/23, at 1-2. Additionally, Perez did not file Rule 1925(b) concise statements due to Judge Scott's appointment. **See** Brief for Appellant, at 7 n.5 (explaining Perez's case was reassigned, but new trial court would not be authoring opinion); **see also** Commonwealth's Brief, at 5 n.3 (agreeing Perez's case had been reassigned and new trial court would not be authoring opinion); **id.** (urging this Court to review Perez's case despite absence of Rule 1925(a) opinion because Perez's claims can be plainly addressed "on the face of the record"). We agree that we need not remand for the preparation of a Rule 1925(a) opinion or Rule 1925(b) concise statement where the claims at issue are plainly reviewable on the record before this Court.

second trial because Judge Hill had previously allowed Dr. McColgan's testimony at Perez's first jury trial. *See id.* at 19-21. Perez contends that where, as here, a new trial is granted, it "wipes the slate clean" and the trial court should start anew, including its rulings on pretrial motions. *See id.* at 20 (citing *Commonwealth v. Paddy*, 800 A.2d 294 (Pa. 2002)). We agree.

"The admission of evidence is in the sound discretion of the trial judge[] and will not be disturbed on appeal absent a manifest abuse marked by an error of law." *Commonwealth v. Brown*, 911 A.2d 576, 584 (Pa. Super. 2006).

Generally, the coordinate jurisdiction rule, or "law of the case doctrine," commands that, upon transfer of a matter between trial judges of coordinate jurisdiction, a transferee judge may not alter resolution of a legal question previously decided by a transferor trial judge. *See Commonwealth v. Starr*, 664 A.2d 1326, 1331 (Pa. 1995). "More simply stated, judges of the same court should not overrule each other's decision." *Commonwealth v. Johnson*, 266 A.3d 657 (Pa. Super. 2021) (Table).[8]

However, in cases where a new trial has been granted, the slate has been wiped clean and a previous court's ruling on the admissibility of evidence "does not bind a new court upon retrial." *Paddy*, 800 A.2d at 311; *see also Commonwealth v. Hart*, 387 A.2d 845, 847 (Pa. 1978) ("When a court

---

[8] *See* Pa.R.A.P. 126(b) (non-precedential decisions filed after May 1, 2019, may be cited for persuasive value).

grants a new trial, the necessary effect thereof is to set aside the prior judgment and leave the case as though no trial had been held. . . . By operation of an order granting a new trial, the cause, in contemplation of law, is precisely in the same condition as if no previous trial had been held.").

Instantly, at the hearing on Perez's pretrial motion, the following exchange occurred:

[Defense Attorney]:  My second argument is that I actually don't think that these fall under [Pa.R.E.] 803[(4)] for two reasons.

The Court:  [C.R.'s] statement or both statements?

[Defense Attorney]:  [C.R.'s] statements.

* * *

[Defense Attorney]:  The first reason why I don't think that they fall under [Rule] 803[(4),] which is statements for diagnosis and treatment, is that [Rule 803(4)] specifically exclude[s] statements that are made for the purposes [of] medical examination that is done in preparation for litigation.  Now[,] in this instance, [C.R.] does not have and never has had[,] and has never complained of[,] any injuries.

[Commonwealth]: Your Honor, just to briefly interrupt.  **This was actually already litigated [before] Judge Hill and decided it's not the grounds for an appeal.  This portion[,] I just think has already been litigated with Judge Hill.  There's the notes of testimony from this hearing if Your Honor would like to see it.**

The Court:  That the—

[Commonwealth]:  That they shouldn't come in because they're not under purposes of medical [diagnosis or treatment] and that they were created for—. . . Judge Hill stated that they would come in under medical [diagnosis or treatment] but that's exactly the purpose of this statute[.]

- 11 -

* * *

The Court:  Okay, [the Commonwealth] is telling me that this issue **was previously litigated**.

[Defense Attorney]:  I don't think on this specific issue but I'm—

The Court:  Well, on the specific issue of [Rule 803(4)]?

[The Commonwealth]:  Yes.

The Court:  Under [the] comment.  So[,] you're saying under . . . [Rule 803(4)], this issue was raised before Judge Hill and decided and then you add on to that the fact that you're raising the comment under [Rule 803(4)], that he didn't look at the comment at that time?

[Defense Attorney]:  It's the comment and then also it's the caselaw that is specifically speaking to child sex cases[.]

* * *

[The Commonwealth]:  Just to be clear, Your Honor, **this specific issue was already litigated before Judge Hill, specifically with respect to this argument, that it was for the preparation of litigation was the whole argument previously made by the prior defense counsel in front of Judge Hill**.

The Court:  What is that you're speaking from?

[The Commonwealth]:  I have the notes of testimony **from the first trial, Your Honor, from the motions hearing, specifically related to this.  I just reread** [prior defense counsel's] **argument, and her whole argument that this was not for treatment or for diagnosis but that it was in anticipation of litigation was her**—

The Court:  And he ruled in favor of allowing the statement to come in?

[The Commonwealth]:  Yes, Your Honor.

- 12 -

The Court: Okay, so he already—**she's saying that all of it was previously litigated**[.]

\* \* \*

The Court: **It was previously litigated and it's done**. . . **That's not an issue for this court.**

\* \* \*

The Court: **Well, I think Judge Hill has already ruled on that . . . So[,] the motion to preclude that from coming in is denied because it[ has] already been decided by Judge Hill and I agree with Judge Hill**.

N.T. Omnibus Pre-Trial Motion Hearing, 1/19/22, at 45-55 (emphasis added).

Based upon the foregoing, we conclude that Judge Scott erred to the extent that she determined she was bound by Judge Hill's prior decision under the law of the case doctrine. It appeared at first blush that Judge Scott did not conduct a merits review of this claim. **See id.** Indeed, the transcript reflects Judge Scott's decision that "[i]t was previously litigated and it's done." **See id.** at 54-55. As noted above, the grant of a new trial "wipes the slate clean" so that a previous court's ruling on the admissibility of evidence generally does not bind a new court upon retrial. **See Paddy**, **supra**. Consequently, we conclude that, to the extent Judge Scott relied on the law of the case doctrine, this was an error of law. **See Starr**, **supra**.

However, this does not end our review. The Commonwealth argues that even if Judge Scott erroneously relied upon Judge Hill's prior determination, Judge Scott still reviewed the merits of Perez's claim. **See** Commonwealth's Brief, at 9-15.

After further review, we agree with the Commonwealth in this regard. Upon close inspection of the record, it appears that Judge Scott both concluded that she was bound by the law of the case doctrine, but also independently reviewed the merits of Perez's claim. Notably, after Judge Scott determined she was bound by the law of the case, she also determined that Perez's claim lacked merit as follows:

> Well, I think Judge Hill has already ruled on that and I agree with him that it comes in under [Rule] 80[3], paragraph 4, and that [c]ounsel is correct that there's no requirement that a competency hearing be conducted in order to determine whether the statements that were given to the doctor had sufficient indicia of reliability because that's the basic purpose of allowing this kind of information to come in.
>
> **It's—this statement was made for and is reasonably pertinent to medical treatment or diagnosis in contemplation of treatment, not in contemplation of litigation[,] and it describes medical history[,] past or present symptoms, pain, sensation or the inception or general character of the cause or external source therefor[e], insofar as reasonably pertinent to treatment for diagnosis in contemplation of treatment.**
>
> **I believe that the statement [] from the child embodied exactly what the section contemplates and that is medical treatment or diagnosis.**
>
> So[,] the motion to preclude that from coming in is denied because it's already been decided and I agree with Judge Hill.

N.T. Omnibus Pre-Trial Motion Hearing, 1/19/22, at 54-55 (emphasis added).

Based upon the foregoing, it is clear that, as we concluded ***supra***, Judge Scott erroneously concluded that she was bound by Judge Hill's prior decision. However, the record also reveals that Judge Scott independently reviewed

Perez's claim and found it to be lacking merit.  Thus, Judge Scott did not err in this regard, and we proceed to Perez's second claim, whether Judge Scott abused her discretion in determining that Dr. McColgan's testimony was admissible.

Perez argues that C.R.'s hearsay statements admitted through Dr. McColgan's testimony were inadmissible hearsay that failed to satisfy any exception to the hearsay rule.  *See* Brief for Appellant, at 21-27.  In particular, Perez argues that the hearsay statements failed to satisfy Rule 803(4)'s medical diagnosis exception.  *See id.*  Perez contends that Dr. McColgan's role was that of a "final forensic interviewer in an ongoing criminal investigation." *Id.* at 21.  Perez asserts that, due to this role, the timing of the interview, and the content of the interview, that C.R.'s statements were not made for the sole purpose of diagnosis and treatment, but rather made for preparation of litigation.  *See id.* at 22-23.  In support of his claim, Perez points out that this was C.R.'s sixth interview and the only interview where C.R. disclosed the assaults.  *See id.* at 25.  Perez posits that C.R.'s statements cannot satisfy Rule 803(4)'s hearsay exception.  *See id.*  We disagree.

We review trial court rulings on the admissibility of evidence for an abuse of discretion.  *Commonwealth v. Thompson*, 106 A.3d 742. 754 (Pa. Super. 2014).  An abuse of discretion is "the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will[,] or partiality, as shown by the evidence of

record." ***Commonwealth v. Harris***, 884 A.2d 920, 924 (Pa. Super. 2018) (citation omitted).

Hearsay is "an out of court statement offered for the truth of the matter asserted and is inadmissible unless it falls within an exception to the hearsay rule." ***Commonwealth v. Manivannan***, 186 A.3d 472, 480 (Pa. Super. 2018) (citation omitted). Rule 803 sets forth the exceptions to the hearsay rule and states, in relevant part, as follows:

> (4) Statement Made for Medical Diagnosis or Treatment. A statement that:
>
> (A) is made for--and is reasonably pertinent to--medical treatment or diagnosis in contemplation of treatment; and
>
> (B) describes medical history, past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof, insofar as reasonably pertinent to treatment, or diagnosis in contemplation of treatment.
>
> > *Comment*: Pa.R.E. 803(4) differs from F.R.E. 803(4) in that it permits admission of statements made for purposes of medical diagnosis only if they are made in contemplation of treatment. **Statements made to persons retained solely for the purpose of litigation are not admissible under this rule.** The rationale for admitting statements for purposes of treatment is that the declarant has a very strong motivation to speak truthfully. This rationale is not applicable to statements made for purposes of litigation. Pa.R.E. 803(4) is consistent with Pennsylvania law. ***See Commonwealth v. Smith***, [] 681 A.2d 1288 ([Pa.] 1996).

Pa.R.E. 803(4) (emphasis added).

Instantly, we observe that C.R., despite being interviewed by DHS and PCA several times, did not disclose the abuse until December 14, 2016, one week before she met with Dr. McColgan. During the meeting, Dr. McColgan explained to C.R. that the role of the doctor "was to keep children healthy and safe." Commonwealth Exhibit 1, at 1 (unpaginated). Dr. McColgan testified that the purpose of the interview and the hospital's "Child Protection Program" is to "have a place where patients can be referred for those comprehensive medical evaluations when concern arose for abuse or neglect." N.T. Jury Trial, 1/24/22, at 61.

After our review of the foregoing and the rest of the record, we conclude that Judge Scott did not abuse her discretion in determining that Dr. McColgan's testimony fell under Rule 803(4)'s exception to the hearsay rule. **See Thompson**, **supra**. Indeed, Judge Scott determined that C.R.'s statements to Dr. McColgan were made for the purpose of treatment, not for the sole purpose of litigation. **See** N.T. Omnibus Pre-Trial Motion Hearing, 1/19/22, at 54-55. The statements, summarized above, clearly describe "past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof, insofar as reasonably pertinent to treatment, or diagnosis in contemplation of treatment." Pa.R.E. 803(4)(B); **see also** Commonwealth's Exhibit 1, at 1-2 (unpaginated) (C.R. describing Perez's actions and general character, cause, pain, and sensations those actions caused). Therefore, the statements fall squarely in paragraph (4)'s exception and were admissible. Additionally, we observe that, at trial,

- 17 -

only the above-summarized statements were admitted as they characterized the necessary information for C.R.'s medical treatment. By contrast, the statements C.R. made to Dr. McColgan regarding **where** the abuse occurred were **not admitted**, as they were not relevant to the medical treatment C.R. was receiving from Dr. McColgan or to Dr. McColgan's diagnosis. Accordingly, Judge Scott did not abuse her discretion in admitting the statements and we affirm.

Judgments of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/27/2025